Porter, J.
The presiding judge of this court, has gone so fully into the case, in the opinion which he has prepared, that I shall confine my examination to what I consider the main question in the cause, and that is, whether the statute of limitations, of South-Carolina, has vested a title to the slave in the defendant.
This enquiry, I think, will be best conducted by pursuing the following divisions of the subject:—
*551 1. Did the statute vest a title in South-Carolina?
2. Whether the owner of the property is bound by a law of this description, when it proved, that he did not reside in the country, where it was enacted?
3. Supposing the title to have vested, in the state where the statute was in force, is there any thing in our laws which prevents the defendant claiming the benefit of that title here?
I. The statute of South-Carolina, is an act of limitation, and from the perusal of it alone, it might be doubted, whether it was any thing more than a bar, which could be plead by the possessor, to an action in which the property was demanded. But it appears, that judicial interpretation of the act has held, that it vests title, and there is no doubt, from the decisions in that state, that there, the person claiming slaves, under the statute, could recover them in the hands of another, as well as plead the act to an action commenced. 2 Bay, 156, 425.
II. The next point, whether the plaintiff, not being a citizen, or resident of South-Carolina, can lose his right to property by a law of that *552 country, is that which has presented the most difficulty to my mind.—If it had been shewn in this cause, that both parties were citizens of that state, I should have no doubt that both were bound by these laws, in virtue of which the one acquired, and the other lost a title to the property, and that the right thus acquired would not be destroyed by the removal of one of the parties into another country.
It is stated by Huberus, an eminent writer on the subject, that whoever makes a contract, in any particular place, is subject to the laws of the place, as a temporary citizen, 3 Dallas, 370, in note. The rule is held to apply, where a contract is made in one country, to be executed in another, and the law of that where the agreement is to be performed, will form the rule of action for the parties. Now, although it has not been shewn, that the plaintiff, or those under whom he claims, ever were residents or citizens of South-Carolina; or that they made any contract there, in relation to the property now sued for; yet enough, I think, has been proved, to enable us to apply, safely and correctly, the principles of law just stated to the case now before the court. For as the evidence estab *553 lishes, that the slave in question was sent by the plaintiff’s mother into South-Carolina, under the care of an agent, this was a voluntary placing of her own property under these laws, to enjoy their protection; to take their advantages, if any in relation to it; and consequently, to bear with their inconveniences.
III. If the title set up here, was by sale, donation, exchange, or any other contract made in South-Carolina, we should hold it good here, if it was so in that state; and the only enquiry would be, did it vest title there? Prescription is a mode of acquiring property. Civil Code, 482, art. 32. Pothier, Traité de la Prescription, chap. 1, as strictly so as the cases of contracts just put. Digest, liv. 50, tit. 16, loi. 28. If in a common case of alienation, we hold it good and valid, because the laws of the country, where it was made, held it so; I cannot see any good reason to reject that of prescription; for it vests and divests title by the very same authority, which declares, that other species of contracts have that effect.
In some of our sister states, it has been *554 held, that in a suit for the recovery of money, the law of limitation in the state where the suit is brought, must govern the rights of the parties, and not that, where the contract was made. There is a clear distinction in my mind, between cases of that description, when the statute is plead as a bar to the demand, and that now before the court, when it vests a complete title to a specific thing; for I have already stated, that I cannot distinguish between the title conferred by prescription, and that acquired by any other mode of alienation and acquisition. When the question does occur here, in a suit for money, it will be then time enough to examine, whether the law of this state, as it regards the limitation of actions, or that, where the parties contracted and lived, shall govern their rights; or if the decisions on this subject can be reconciled with the principles of law, or supported by the authorities on which they profess to rely.
I am therefore of opinion, that the judgment of the parish court be affirmed with costs.
Martin, J.
I have carefully considered the opinion, which judge Mathews has prepared. *555 and is about to read, and perfectly concur with him.
Mathews J.
This suit is brought to recover from the defendant, a slave in his possession, claimed by the plaintiff, as sole heir to his mother, in whom he alleges title, at the time of her death.
The defendant relies on a title derived through several persons residing in South-Carolina, and on a right acquired by possession and prescription; judgment being for the defendant in the court below, the plaintiff appealed.
The evidence on the part of the appellant, which is entirely oral, establishes his heirship, as alleged, and shews that his mother had the slave in dispute, while she resided in the islands of St. Domingo and Cuba, from which latter place, she sent him to South-Carolina.
The acts of sale offered by the appellee, to support his title, were objected to by the counsel of the plaintiff, as not being sufficiently proven; and bills of exceptions regularly taken to the opinions of the judge of the court a quo, by which they were allowed to be given in *556 evidence. But from the investigation which I have given to the cause, it is deemed unnecessary to examine those exceptions; as the testimony received without opposition, clearly establishes an uninterrupted and peaceable possession, of at least fifteen years duration, in the persons under whom the defendant claims.
Admitting that the evidence in the case proves title in the ancestor of the appellant, and that the defendant’s claim rests solely on a title, vested in those under whom he holds the slave, acquired by prescription; the first question to be diposed of, as stated by the plaintiff’s counsel, is, by what laws must the cause be decided, in relation to the title set up by the appellee? Those of South-Carolina, where the property was, or those of this state where the suit is commenced? I am of opinion, that the validity of this title, by prescription, ought to be ascertained and determined according to the laws of the former state: were it to be settled by our laws, on the subject, there would be little difficulty in deciding the case, as they could not operate on the slave in dispute, previous to his having been brought within the limits of the state; *557 and this did not happen, as is shewn by the record, until a month or two before the commencement of the present action.
The law of South-Carolina, on which the defendant rests his title, is a statute of limitations; prescribing the period within which suits may be rightfully commenced in that state, having for their object and end, the same which is here sought by the plaintiff. The period of limitation is there, four years, for persons present, and one more is allowed to those who are absent, making five for the latter, and by the lapse of this time, their right of action is barred.
It is contended on the part of the appellant, that this law must be considered as relating only to the remedy, or relief grantable by courts of justice, and not to the right of property. In other words, that it is lex fori and not lex loci contractus; and that to the former species of laws, a foreign tribunal will give no effect. So far as they relate to the recovery of debts, from the cases cited in support of this doctrine, little doubt can remain of such being the practice adopted by the courts in several states of the union; and supported by the opinions of judges highly eminent, for ta *558 lents and learning. Without admitting or denying the correctness of these decisions, as founded in justice, policy, and a proper comity between states. I think the case now under consideration, may be clearly distinguished from any which have been exhibited to the court. The questions in them decided, turned wholly on disputes about privileges, or a right to recover debts, barred by the laws of limitation which were in force, in the former residence of the contracting parties; and such laws are based solely on a presumption of payment. In no instance was there any contest relative to rights or title, vested in the possessor of property, as a necessary consequence, resulting from a statute of limitations which barred the claim of the owner.
Whatever might be my opinion, as to the force and effect which ought to be given to the laws of limitation, of a foreign state, in relation to the recovery of debts, I have no doubt, they may become the means of acquiring title, when they operate so as to prevent the proprietor from recovering his property, in consequence of an adverse possession.
Possession of things is prima facie evidence of right and title to them; and if it has been of *559 such duration, that the laws of the country, where they are situated, will not allow the possessor to be disquieted. I do not think it, by any means, a forced and unfair construction of law, to decide, that title, absolute and indefeasible, is gained by such possession.—The owner, by neglecting to use the remedy accorded to him, loses his right, which the bona fide possessor acquires.
It is perhaps true, that fraud on his part, or excusable ignorance on the part of the proprietor, might require a different interpretation and application of the law of limitation. But in the present case, it cannot be pretended that either of them existed. The evidence shews that good faith accompanied the possession of the slave, in every change of master; and that he was sent by the plaintiff’s mother, to South-Carolina; so that she could not be ignorant of the laws under which he was placed, and her means of redress against adverse possessors.
This view of the subject places a law of limitation to an action, for the recovery of property, on a footing with the usucapio of the Roman system of jurisprudence, viz. a mean of acquiring property; nor am I able to discover *560 any incongruity in the principles, on which these rules are founded—usucapio is defined in the R. Digest, to be adjectio dominii per continuationem possessionis, temporis lege definiti.—It was introduced for the public good, that the titles of property might not forever remain uncertain; after allowing sufficient time to the owners, to pursue their claims. D. 41, 3, 1 et s.
In the early periods of states, it may be considered as sound policy, to make the time for acquiring property by possession, of short duration. By the ancient Roman law, as contained in an article of the Twelve Tables, one year of possession was sufficient to save title to moveables, and two to immoveables, being what were termed res mancipii. In regard to incorporeal things, the Prœtor had established a prescription of ten and twenty years, or as it is called longi temporis. At first, under this prescription the possessor did not acquire the dominion of the thing, but only the benefit of an exception, or plea in bar, to any action brought by the proprietor. Afterwards the actio utilis was accorded to the possessor to recover the thing, when he had lost the possession, pour revendiquer la chose, as expressed *561 by Pothier. The distinction between the res mancipii & nec mancipii, was abolished by the emperor Justinian, and usucapio and prescriptions longi temporis put on the same footing; this constitution, on this subject, it is believed, forms the basis of the laws, relating to prescription in those countries, which have founded their jurisprudence on the Roman law; and, in all of them, it is considered a mode of acquiring property. But it is seen, that even before this law of Justinian, an action had been accorded to a possessor, to recover property, of which he had lost possession; and this could only have been regular, on the principle, that he had acquired title by such possession.
Upon the whole, I am of opinion that laws limiting the time, within which actions ought to be commenced, for the recovery of property, may operate in such a manner, as to vest a title in a bona fide possessor, and that the law of South-Carolina has produced this effect in the present case.
It is therefore, ordered, adjudged and decreed, that the judgment of the parish court be affirmed with costs.