## Dennison *versus* Page.

·The mother of a child born in wedlock, but begotten before, is incompetent to prove that the child was not begotten by the man who became her husband before the birth of the child, in the absence of other evidence of non-access.

Where there is no evidence of non-access at the time of conception, the declarations and acts of the husband and wife at the birth of the child, or subsequently, are inadmissible to prove it illegitimate.

ERROR to the Common Pleas of *Fayette county*.

· This was a feigned issue directed by the Orphans' Court to the Common Pleas, in which William Dennison and Mary his wife were plaintiffs, and Henry L. Page and others were defendants, to determine whether Mary Dennison was an heir at law of Samuel Page, deceased.

In a proceeding in partition by the plaintiff in error on the real

[Dennison v. Page.]

estate of Samuel Page, deceased, in the Orphans' Court of Fayette county, Mary Dennison, wife of William Dennison, claimed to be a legitimate child of the said Samuel Page, and asked to be made a party to said proceedings.   This the plaintiff in error denied—hence this issue.   Samuel Page married Mary Shank, and three or four months afterwards the said Mary Dennison was born; Page instantly disclaimed being the father of the child, and she was almost immediately removed to her grandfather's, by whom she was raised, and that she was never recognised by Page as his child.   On the trial of the cause the defendants offered to prove by Mrs. Page, the mother of Mary Dennison, and widow of Samuel Page, that she was begotten before and born about three months after her marriage with said Page, and that he was not her father, but that a man by the name of Rist was.   To the admission of this testimony the plaintiffs objected—the court sustained the objection, and overruled the evidence.

The defendants then offered to read those parts of the testimony of Anna McBride, Hannah Frances, and James Estep, taken on rules, which showed circumstances going to prove the illegitimacy of Mary Dennison.   To all this testimony the plaintiffs objected— the court sustained the objection, and overruled the evidence.

The defendants then offered to prove by circumstances that Mary Dennison was illegitimate, and was treated as such by her parents and the family.   To that part of the offer of the manner in which the child was treated by her parents, the plaintiffs object, being incompetent as going to prove illegitimacy—the court sustained the objection, and overruled the evidence.

The defendants then called Jonathan Newmyer and offered to prove what took place at the time of the birth of the child, that the child was taken to its grandfather's immediately after birth, and had never been with its mother and her husband.   Plaintiffs objected—the sustained the objection, and overruled the evidence.

The court then directed the jury to return their verdict for the plaintiffs.

The defendants thereupon took this writ, and assigned the rejection of the evidence as contained in the foregoing offers, for error.

*Kaine,* for plaintiff in error.

*Ewing* and *Davidson,* for defendants in error.

The opinion of the court was delivered by

KNOX, J.—Mary Dennison was born three months after the marriage of her mother with Samuel Page.   Her right to any part of his real estate was denied upon the allegation that he was not her father.   To determine the question of her legitimacy, an

issue was certified by the Orphans' Court of Fayette county to the Court of Common Pleas.

Upon the trial the defendant offered to prove by Mrs. Mary Page, the mother of Mrs. Dennison, that Samuel Page was not her father; that she was begotten before the witness was married to Samuel Page, and that he did not beget her. The refusal of the Court of Common Pleas to receive Mrs. Page's testimony, forms the first assignment of error.

Where a child is begotten and born whilst its mother is a married woman, its legitimacy is presumed, until the contrary is clearly made to appear. This presumption can be removed by showing that the husband had no sexual intercourse with his wife at any time when it was possible for the child to have been begotten. Does the ante-nuptial conception weaken the presumption of legitimacy arising from the post-nuptial birth? It is well settled by authority that it does not. A child born in wedlock, though born within a month or a day after marriage, is legitimate by presumption of law: *Co. Lit.* 244 a. And where a child is born during wedlock, of which the mother was visibly pregnant at the marriage, it is presumed, *juris et de jure*, that it was the offspring of the husband. In Rex *v.* Luff, 8 *East* 198, Lord ELLENBOROUGH said that "with respect to the case where the parents have married so recently before the birth of the child, that it could not have been begotten in wedlock, it stands upon its own peculiar ground. The marriage of the parties is the criterion adopted by the law in cases of ante-nuptial generation, for ascertaining the actual parentage of the child. For this purpose it will not examine when the gestation began, looking only to the recognition of it by the husband in the subsequent act of marriage." And in the same case, LE BLANC, J., said: "Our attention has been called to cases where a child born within a short time after the marriage of the parents, is by the rule of law considered legitimate. That is a rule of law not to be broken in upon, except as in other cases by proof of natural imbecility," &c.

In Stigall *v.* Stigall, 2 *Brockenborough* 256, the marriage preceded the birth about six months, and there was no reason to suppose it a premature birth, yet the case was treated by C. J. MARSHALL precisely as though the child was begotten in wedlock, making the question of legitimacy depend upon the access of the husband. In Bowles *v.* Bingham, 2 *Munford* 442, the marriage took place in January, and the birth in the succeeding April. The opinion of the court, delivered by Judge ROAN, is to be found in 3 *Munford* 599, and it clearly establishes the doctrine that the presumption of legitimacy is the same where the child is born in wedlock, whether begotten before or after. So in The State *v.*

[Dennison *v.* Page.]

Wilson, 10 *Iredell* 131. And in The State *v.* Herman, 13 *Id.* 502, the same rule is asserted and followed.

In the last-mentioned case, where the child was born five months and two days after the marriage, Chief Justice RUFFIN, in delivering the opinion of the court, said: "There seems to be no difference in point of law between a case where the conception was prior and posterior to the marriage, provided the birth be after wedlock, for that makes the legitimacy."

It follows, from the authorities above quoted, that the legitimacy of a child born in wedlock, though begotten before the marriage, is founded upon the supposition that it was begotten by the man who subsequently became its mother's husband, and that this presumption can only be rebutted by clearly proving that no sexual intercourse occurred between the two at any time when the child could have been begotten. Whether it was begotten in or out of wedlock, where the marriage precedes the birth, the presumption of paternity is the same, and the like evidence is required to bastardize the issue. That evidence is proof of non-access. Where the husband, or he who subsequently becomes such, has access to the mother of the child, the presumption that he is its father is conclusive. By the term access, used in this sense, we understand actual sexual intercourse; and this is presumed in the one case from the existence of the marital relation, and in the other from the subsequent marriage. Where marriage follows pregnancy, and precedes birth, he who marries the pregnant woman is presumed to be the father of the after born child. Upon this presumption rests the doctrine of the common law, that legitimacy follows birth in wedlock.

The question before the jury was, whether or not Samuel Page was the father of Mrs. Dennison? That he was her father, his marriage with her mother before her birth clearly establishes, in the absence of proof of non-access. The proffered testimony, in substance, though not in form, was to prove non-access.

That the mother was incompetent to prove this, is perfectly well settled by abundant and uniform authority. Non-access cannot be proved by either the husband or the wife, whether the action be civil or criminal, or whether the proceeding is one of settlement or bastardy, or to recover property claimed as heir at law.

I will mention some of the numerous cases where the question has been decided.

In Rex *v.* Rook, *Wilson* 340, which was a bastardy case, it was held that the wife could not be a witness to prove non-access.

The same point had been previously decided in Rex *v.* Inhabitants of Reading, *Hardwicke Cases* 82; Rex *v.* Luff, 8 *East* 163, was also a bastardy case, and there Lord ELLENBOROUGH said that the rule which forbade the wife to prove non-access, "was founded upon a principle of public policy which prohibits

[Dennison *v.* Page.]

the wife from being examined against her husband, in any matter affecting his interest or character." In Goodright *v.* Moss, 2 *Cow.* 591, where the question of legitimacy arose in an action of eject- ment, Lord MANSFIELD said: "As to the time of the birth, the father and mother are the most proper witnesses to prove it. But it is a rule founded in decency, morality, and policy, that they shall not be permitted to say after marriage that they have had no connexion, and therefore that the offspring is spurious."

In Cope *v.* Cope, 15 *Moody & Robinson* 269, which was an issue out of chancery, to try the legitimacy of Willis Cope, Jus- tice ALDERMAN said: "The wife is not allowed to prove the ille- gitimacy of the child, as by showing non-access." In The King *v.* The Inhabitants of Kea, 11 *East* 131, a settlement case, an attempt was made to prove by the mother the non-access of the husband, on the ground that the husband was dead at the time of the trial; but Lord ELLENBOROUGH, with the concurrence of the other judges, decided that the evidence of the wife ought not to be received to prove non-access, whether the husband was living or dead when the evidence was offered.

In the cases already referred to in 10 and 13 *Iredell*, the evi- dence of the mother to prove non-access, was held to be incom- petent. These were both cases where pregnancy preceded mar- riage.

The same rule is laid down by the elementary writers on evi- dence, Starkie, Phillips, Greenleaf, and others; and to the same effect is our own case of The Commonwealth *v.* Shepherd, in 6 *Binney* 283. It is true that the same reasons are not always given for the rule. In some of the cases it is said to be founded upon the question of interest, and in others upon a question of policy; but whatever may be the reason for the rule, whether good, bad, or indifferent, the rule itself is an inflexible one, and in no event can the wife be permitted to prove non-access of the husband. There was no error therefore committed in rejecting the evidence of Mrs. Mary Page.

But the defendant further offered to prove that Samuel Page said at the time of the birth of Mary Dennison, that she was not his child; that he repeated this declaration afterwards, and added that she should never inherit any portion of his estate; that he was found in tears on the morning of the birth; that the mother said, about the time the child was born, that it belonged to a man by the name of Risk; that on account of the difficulty as to its legitimacy, the child was taken, three days after its birth, to the house of its mother's father, where it was raised; and that it was treated by Mr. and Mrs. Page as illegitimate. This evidence was also rejected, and upon its rejection is based the remaining assign- ments of error.

In considering the question, whether there was any error in

[Dennison v. Page.]

rejecting proof of the facts above stated, it must be borne in mind that, at the time of the offer, no evidence had been given which disproved or tended to disprove sexual intercourse between Samuel Page and Mary the mother of Mrs. Dennison, at or about the period of conception, nor was it proposed to follow the offer by such evidence. The parties had lived, for many years before their marriage, within five miles of each other; but how long their acquaintance preceded their marriage, or whether or not they were frequently in each other's company, was not shown upon trial. That the declarations of Mr. and Mrs. Page, at or about the time of the birth, followed as they were by the removal of the infant to the house of its mother's father, where it was raised as an illegitimate child, would have strongly corroborated evidence of non-access, is, to my mind, very clear; but I am equally clear that the evidence was only admissible as corroborative, and that it was insufficient of itself to prove non-access.

It cannot be denied but that the conduct of Mr. and Mrs. Page, when the child was born, was unfavourable to its legitimacy; but the policy of the law so strongly favours legitimacy, that it is not in the power of either husband or wife, or both, to bastardize a child born in wedlock.

The old rule, that the presumption of legitimacy could not be overcome by any proof less than the absence of the husband beyond seas, previous to and during the whole time of gestation, no longer exists.

The modern rule is, that where the evidence plainly shows such non-access on the part of the husband, that he could not, in the course of nature, have been the father of the child, it is sufficient to destroy its legitimacy. But nothing short of this will bastardize one born in wedlock: Rex v. Luffe, 8 *East* 193; Foxcroft's Case, 1 *Roll's Ab.* 359; Stigall v. Stigall, 2 *Beach* 256. Declarations of parents may be given in evidence to prove or disprove marriage, where the parties have cohabited: *B. N.* p. 112; or to prove whether the child was born before or after marriage: Goodright v. Moss, *Cowp.* 591; but they are not admissible to prove the illegitimacy of a child born in wedlock: 7 *Martin* 553; 2 *Beach* 256. So a husband's declaration that a child born in wedlock is not his, is not sufficient evidence to prove it illegitimate, notwithstanding it was born only three months after marriage, and a separation between the husband and wife took place by mutual consent: Bowles v. Bingham, 2 *Munford* 442. In Morris v. Davis, 5 *Clark & Finnelly* 163, the presumption of legitimacy was held to be rebutted by evidence of the conduct of husband and wife: such as that the wife was living in adultery; that she concealed the birth of the child from the husband, and declared to him that she never had such child; that the husband disclaimed all knowledge of the child, and acted up to his death as if

[Dennison *v.* Page.]

no such child was in existence; and also that the wife's paramour aided in concealing, reared and educated it as his own, and left it all his property by his will. But there was also in the case evidence which tended strongly to prove that the husband had no sexual intercourse with the wife at the period of conception; and in Rex *v.* Mansfield, 1 *Queen's Bench* 449, it was held that the fact that the wife was living in adultery was not sufficient to destroy the legitimacy of a child born in wedlock, but that there must be evidence from which a jury could find non-access. There are many other cases, English and American, bearing upon the question here presented, but it is unnecessary to cite them, for they are all consistent with the points ruled in the Common Pleas; which were, 1. That the mother of a child born in wedlock, though begotten before, was incompetent to prove that the child was not begotten by the man who became her husband before its birth, in the absence of evidence of non-access; 2. That where no evidence of non-access at the time of conception was given, the declarations and acts of the husband and wife at the birth of the child, or subsequently, were inadmissible to prove it illegitimate.

Judgment affirmed.