# Torrence's Estate.

*Evidence—Parent and child—Legitimacy—Marriage.*

1. Where a woman claims to be the only heir of a decedent, and bases
her claim upon the alleged fact that she was born four months after her
mother's marriage with the decedent, and the fact of the marriage is
disputed, the court may admit in evidence a proceeding in divorce in
which the mother was libelant and the decedent respondent as an
admission on the part of the mother of the fact of her marriage with
the decedent.

2. In such a case a locket said to have been presented to the claimant
by her father with a picture of her mother therein, is properly admitted
in evidence as corroborating the declarations of the decedent that the
claimant was his daughter; but it is not proper to admit in evidence the
declarations of a stranger made twenty years before, that the claimant
was the daughter of another man than the decedent; nor is it proper
to permit a witness for the claimant to be asked on cross-examination
whether the decedent had not compelled by legal proceedings a cer-
tain man named to deliver to him certain letters written by plaintiff's
mother to himself.

*Orphans' court—Auditing judge—Findings of fact—Review.*

3. Findings of fact by an auditing judge as to the legitimacy of a
claimant of an estate, when confirmed by the court in banc, and based
upon sufficient evidence, will not be reversed by the appellate court
in the absence of manifest error.

*Marriage—Evidence—Justice of the peace.*

4. Evidence that a woman joined her hands with that of a man be-
fore a justice of the peace, stood mute during the marriage ceremony
which the justice performed, and did not in any way dissent when the
justice declared them man and wife, does not justify an inference that
the woman refused her assent to the marriage.

Argued May 2, 1911. Appeal, No. 89, April T., 1911,
by H. D. Gamble et al., from decree of O. C. Allegheny

Co., March T., 1909, No. 3, dismissing exceptions to adjudication in Estate of James Torrence, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Exceptions to adjudication.

At the audit the following offer was made:

Mr. Finley: We offer in evidence the record in the divorce proceeding at No.　, November Term, 1857, of Peoria county, Illinois. The proceeding is headed Mary Elizabeth Torrence v. James Torrence, and the decree is granted to Mary Torrence. This Mary Elizabeth seems to have gotten in the record.

Mr. Stevenson: We object to this record as incompetent and irrelevant,

1. Because there is no identity of names shown, Mary Elizabeth Torrence it is;

2. For the further reason that this record nowhere shows any affidavit or testimony by libelant, or of any other person that there ever was a marriage;

For the additional reason that it does not appear that James Torrence ever had any notice of it whatever, no kind of service shown upon the record; and

Finally, for the reason that the decree is granted in the name of Mary Torrence v. James Torrence, and in our judgment it is entirely incompetent for any purpose.

The Court: You will have to show the identity, Mr. Finley.

Mr. Stevenson: I don't think I will insist upon the identity of the parties, I will withdraw that objection, because I think there is no doubt that this was the party.

The Court: How about personal service?

Mr Finley: The notice according to the record here is by publication, and the allegations in the bill we rely upon that she was married to James Torrence. We simply offer the record for what it shows.

Objections overruled and bill sealed for H. D. Gamble et al.

Subsequently the court made the following ruling on said offer:

And now, to wit, November 22, 1909, the record in divorce above recited was competent for the purpose of showing Mrs. Torrence's admission of the fact of marriage to James Torrence and for this reason objection thereto overruled and bill sealed nunc pro tunc. [1]

Mr. Nevin: We offer in evidence the locket identified by Mrs. Watts and Mrs. Speers.

Mr. Stevenson: I object to this locket,

1. For the reason that the cover is missing and in no way explained; and

2. Because there was no sufficient evidence showing that the locket is in the same condition now, especially in regard to that picture, as it was when it was supposed to be given to Mrs. Speers.

Objections overruled and bill sealed for H. D. Gamble et al. [2]

Mr. Stevenson to Jacob W. Amalong: Now do you know of any matter that occurred between James Torrence and this man William Boyce with reference to any letters that Mary Ellen had written to William Boyce about that time?

Mr. Finley: We object to this as not cross-examination. There was no testimony of that kind brought out by us.

The Court: If she had been there and admitted the genuineness of these letters it would be competent; but the mere talk between Torrence and Boyce would not affect the question of the paternity of the child, unless you produce the letters themselves.

Mr. Stevenson: It would be impossible for us to produce the letters.

The Court: I don't think it is competent.

Mr. Stevenson: The petitioner, Laura Speers, having called the witness to prove admissions by James Torrence in regard to the parentage of this child, we propose as part of our cross-examination to ask him whether or not at the same time he was out with James Torrence, the said

James Torrence did or did not bring a suit, criminal suit against William Boyce to compel him, the said Boyce to deliver over to the prosecutor Torrence certain letters written by Mary Ellen Torrence or Mary Ellen Power, whichever she was called, to this man William Boyce, and that at the hearing William Boyce did deliver these letters of Mary Ellen Power over to James Torrence?

Mr. Finley: Counsel for petitioner objects to this offer for the reason that it is incompetent, irrelevant and not cross-examination.

Objection sustained and bill sealed for H. D. Gamble et al. [3]

Mr. Stevenson to John Hasson: I ask you whether or not in any conversation you had with Frank Boyce, the brother of William Boyce, he made any declarations to you as to who was the father of this Laura Speers?

Mr. Finley: Objected to as incompetent and irrelevant.

The Court: I don't think it is competent.

Mr. Stevenson: I offer to show by the witness on the stand a conversation about twenty years ago between the witness and Frank Boyce, a younger brother of William Boyce; that the said Frank Boyce stated that the petitioner in this case, Laura Speers was the daughter of William Boyce.

Mr. Finley: This testimony is objected to for the reason that it is incompetent and irrelevant; that it is mere hearsay evidence, and in no way tending to bind either James Torrence or Mary Ellen Power Torrence; that it is the evidence of a third party and a stranger to this record; and further that they have not laid a foundation for the admission of this kind of testimony.

The Court: Objection sustained and bill sealed. [4]

The court awarded Laura Speers one-half of the distribution.

*Errors assigned* were various rulings on evidence raised by exceptions, and the decree in favor of Laura Speers.

*M. H. Stevenson* for appellants.—Consent freely given is

the essence of marriage contract: Guardians of Poor v. Nathan, 2 Brewster, 149; Physick's Estate, 2 Brewster, 179.

Ceremony without consent is no marriage: Roszel v. Roszel, 73 Mich. 133 (40 N. W. Repr. 858); Collins v. Collins, 2 Brewster, 515; Jackson v. Winne, 7 Wend. 47.

*James M. Nevin*, with him *Thos. E. Finley*, for appellee. —The divorce record was admissible: Covert v. Hertzog, 4 Pa. 145; Caujolle v. Ferrie, 23 N. Y. 90; Berkeley Peerage Case, 4 Campbell, 401; Taylor v. Cole, 7 T. R. 3n.

A child born in wedlock, though born within a month or a day after marriage, is legitimate by presumption of law: Dennison v. Page, 29 Pa. 420; Kleinert v. Ehlers, 38 Pa. 439.

OPINION BY BEAVER, J., July 13, 1911:

Decedent died testate, devising his real estate to certain tenants for life, with the remainder in fee to their two children, Charles T. Hetherington and Eva Minnie Hetherington. The latter died prior to the death of the testator and of her parents, the life tenants, whereby the one-half of the devise of the remainder in fee lapsed. After the death of the life tenants, Laura Speers petitioned the court for partition of the real estate, alleging that she was the only heir at law of James Torrence, deceased. This was answered by the surviving remainderman, who admitted the death of James Torrence and also the death of his sister, Eva Minnie Hetherington, denying also that the petitioner was an heir at law or had any right, title or interest whatsoever in the real estate. The appellants presented a petition admitting the allegations thereof, "except the allegation that she is a daughter of James Torrence and his only heir at law, which is denied," alleging, "that these petitioners are the only heirs, being the children of Mary J. Gamble (a full sister) and of William Torrence (a full brother) of decedent," and asking, "that they be permitted to intervene and be substituted in place of Laura Speers," etc.

The principal questions raised in the orphans' court, therefore, were the paternity and legitimacy of Laura Speers, and these questions gave rise to the mass of testimony taken before the orphans' court.

The court below granted the petition of Laura Speers, the appellee here, and decreed partition according to its prayer. Exceptions were filed to this decree and, upon hearing by the court, were dismissed and the final decree filed, finding: "the interest of the parties in the real estate mentioned and described in said petition to be as follows, namely, Laura Speers one-half ($\frac{1}{2}$), Charley T. Hetherington one-half ($\frac{1}{2}$) and "that partition be made of the land described in said petition to and among the said parties entitled thereto, and an inquest of partition is awarded for that purpose, returnable October 23rd, 1909."

The allegation of the appellee is that she was born in lawful wedlock three or four months after the marriage of her mother, Mary Ellen Power, and her father, James Torrence. Much of the testimony in the case relates to the question of fact as to the marriage. The parents of several of the witnesses were present at the ceremony, performed by a justice of the peace at the residence of the bride's father, who communicated what occurred at the ceremony to them. Declarations of the husband that Mary Ellen Power was his wife and that Laura, her daughter, was his daughter; like declarations of the wife that James Torrence was her husband and that Laura was his daughter, are also in evidence.

Among other things, the appellee offered in evidence the record of a proceeding in divorce at No. , November Term, 1857, of Peoria county, Illinois, in which Mary Elizabeth Torrence is the libelant and James Torrence the respondent. This was objected to by the appellants as incompetent and irrelevant, first, because there is no identity of names shown, the name being Mary Elizabeth Torrence, and for other reasons fully set forth. The court intimated that it would be necessary for the peti-

tioner's counsel to show the identity, whereupon Mr. Stevenson, representing the appellants, said: "I don't think I will insist upon the identity of the parties. I will withdraw that objection, because I think there is no doubt that this was the party. The court: How about personal notice? Mr. Finley (for the petitioner): The notice, according to the record here, is by publication, and the allegations in the bill we rely upon that she was married to James Torrence. We simply offer the record for what it shows," upon which the court subsequently made the following formal ruling: "And now, to wit, November 22, 1909, record in divorce above recited was competent for the purpose of showing Mrs. Torrence's admission of the fact of marriage to James Torrence, and for this reason objection thereto overruled and bill sealed nunc pro tunc." We think the evidence was properly admitted. It was a distinct admission by one of the parties of the marriage, the libel in divorce being in itself an implied admission of the formation of a tie which the application sought to sever.

A locket, said to have been presented to the appellee by her father, with a picture of her mother therein, was offered in evidence. The offer was objected to by the appellants, on the ground of its being incompetent, for the reason that the cover is missing and that there was not sufficient evidence showing that the locket is in the same condition now, especially in regard to that picture, as it was when it was supposed to be given to Mrs. Speers. The objection was overruled and the locket admitted. We think it was properly admitted. It was doubtless for the purpose of showing the relation between James Torrence, who presented the locket, and his supposed daughter, the appellee. The appellants had the opportunity of cross-examination as to the condition of it, and the objections, therefore, do not seem to us to be of sufficient weight to cause its exclusion. It had direct bearing upon the relation of the donor to the recipient and was competent, it seems to us, for the purpose of corroborating

the declarations of James Torrence that the appellee was his daughter.

The third assignment of error relates to the rejection by the court of certain testimony offered by the appellants. The offer is as follows: "The petitioner, Laura Speers, having called the witness and proved admissions by James Torrence in regard to the parentage of this child, we propose, as part of our cross-examination, to ask him whether or not at the same time he was out with James Torrence, the said James Torrence did or did not bring a suit, criminal suit, against William Boyce to compel him, the said Boyce, to deliver over to the prosecutor Torrence certain letters written by Mary Ellen Torrence, or Mary Ellen Power, whichever she was called, to this man, William Boyce, and that at the hearing William Boyce did deliver these letters of Mary Ellen Power over to James Torrence." The offer was objected to by the appellee for the reason that the testimony was incompetent, irrelevant and it was not cross-examination. We think it was properly excluded for all the reasons mentioned. It was not cross-examination, so far as we are able to ascertain from the testimony, as printed, nor was it either competent or relevant. Even if the letters had contained a denial of the paternity of James Torrence, we do not think it would have been competent, the question being very fully discussed and determined in Dennison v. Page, 29 Pa. 420.

So as to the refusal of the court to receive the testimony offered and ruled out, as contained in the fourth specification of error. The offer was: "I offer to show by the witness on the stand a conversation about twenty years ago between the witness and Frank Boyce, a younger brother of William Boyce; that the said Frank Boyce stated that the petitioner in this case, Laura Speers, was the daughter of William Boyce." The objection was made: "This testimony is objected to for the reason that it is incompetent and irrelevant; that it is mere hearsay evidence and in no way tending to bind either James

Torrence or Mary Ellen Power Torrence; that it is the evidence of a third party and a stranger to this record; and further that they have not laid a foundation for the admission of this kind of testimony." We are at a loss to determine upon what ground the appellants defend their offer. There are certainly no facts alleged in the offer which would make the declarations of a stranger as to the legitimacy of the appellee competent or relevant. There is no attack upon the fact of the marriage of James Torrence and Mary Ellen Power and, if the marriage is established, as we think it clearly was, the presumption of law as to the legitimacy of the child is practically conclusive. Certainly it cannot be sucessfully attacked nor presumed to be attacked by the loose declaration of a party who had no knowledge upon the subject and who is not alleged by the appellants to have had knowledge: Dennison v. Page, 29 Pa. 420.

The appellants dwell, with considerable emphasis, upon the testimony of one witness who detailed a conversation had by him with the justice of the peace who performed the marriage ceremony, in which he infers from the language of the justice that Mary Ellen Power refused her assent to being wedded to James Torrence. The language which he details as coming from the justice does not justify such an inference. She joined her hand with that of the man, stood mute during the ceremony and did not in any way, when the justice declared them man and wife, dissent. The witness states that the justice insisted that the marriage was a valid one, and in this we think he was correct. As the court below well said: "the facts here are stronger than in the Copley case in Jackson v. Winne, 7 Wendell, 47, cited with approval by Mr. Justice READ in Barnett et al. v. Kimmell, 35 Pa. 13." Admitting that the testimony was competent and relevant, it does not seem to us to raise even a question as to the validity of the marriage. Even if a doubt could be raised in our mind by the testimony of this witness, inasmuch as it relates to a question of fact, it would be set

at rest by the finding of the judge who heard the case, approved on exception by the court below, in accordance with the well settled rule in such cases.

The fifth, sixth, seventh, eighth, ninth, tenth and eleventh specifications of error all relate to findings of fact by the court. These facts are found by the auditing judge who heard the case and confirmed upon exception presumably by the court in banc and are, therefore, practically binding upon us, unless clearly against the evidence. We have read the evidence with great care and are satisfied that they are all in accordance therewith. They involve the validity of the marriage of the parents of the appellee and of her paternity, as admitted both by her putative father and mother. And these facts being established, the decree of the court that the appellee, the petitioner in the court below, was the heir at law of James Torrence and, therefore, entitled to the one-half of his real estate, is clearly justified, the said decree being assigned for error in the twelfth assignment.

It follows that all of the assignments of error must be overruled.

The decree of the court below is, therefore, affirmed and the appeal dismissed at the costs of the appellants.