## Yost v. Yost

*Joseph J. Kenny*, for libellant.

Koch, P. J., April 20, 1931.—The ground upon which a decree of divorce is sought in this case is "such indignities to the person of the libellant as to make his life burdensome and render his condition intolerable."

The subpœna in this case was issued May 27, 1929, and on December 22, 1930, Joseph J. Kenny, Esq., presented his petition, in which he averred that the respondent is a minor, and prayed the court to appoint a guardian *ad litem*. Thereupon one Abe Cramer was so appointed. Service had been made by publication and a master had then already been appointed to take the testimony. Mr. Kenny did not say in his petition in whose interest he made the petition; however, the master in his report mentions Mr. Kenny as appearing before him in behalf of the libellant. When Cramer was appointed as guardian *ad litem*, all the testimony had already been taken before the master, so Cramer, without doing more, on February 17, 1931, confirmed the service of publication and the testimony of all the witnesses. We do not regard such slight action on the part of the guardian as sufficient in this case. A guardian should defend his ward: McDevitt *v.* Ridgway, 5 Montg. 119. The witnesses were all called *ex parte* and no cross-examination was had of any of them. Besides, the minor or next of kin should have had notice of the intended application for the appointment of the guardian *ad litem.*: Graham's Estate, 14 W. N. C. 31.

The master made up and filed his report with the record-roll on March 16, 1931.

According to the facts found by the master, these people were married May 19, 1928, in the City of Mount Carmel, Northumberland County, Pennsylvania, and it is so averred in the second paragraph of the libel, but in the tenth paragraph of the libel it is averred that the marriage was contracted in Schuylkill County. The wife gave birth to a child on June 26, 1928, but it died October 10, 1928. The libellant was permitted to bastardize the child before the master, but he was not competent for that purpose: Dennison *v.* Page, 29 Pa. 420; Com. *v.* Shepherd, 6 Binney 283.

The master finds that, immediately after the marriage, "the respondent began to take queer spells. These attacks were in the form of an indefinite period of supposed unconsciousness with all the apparent symptoms of a genuine case of epilepsy." And the hearsay testimony is to the effect that the "fits" were assumed. She was shiftless, lazy and filthy about her person and home. "Whenever a meal was to be prepared, or any other housework to be done, she would throw herself into one of these aforementioned fits." "Whenever the libellant remonstrated with the respondent about her course of conduct she would immediately assume one of her queer spells." "She

12

was an utterly incapable, irresponsible wife." The master further says, "her pretended fits so utterly disgusted the libellant that his condition was rendered intolerable and his life burdensome," and "the unsanitary conditions of his home and his wife's person, due to her carelessness and neglect, endangered the health of the libellant." The master, therefore, recommends the entry of a decree of divorce. Fits, filth and laziness are not statutory grounds for a divorce.

But the master thinks such a decree is warranted by the case of Russell *v.* Russell, 37 Pa. Superior Ct. 348. We do not think so. The facts in this case do not bear any resemblance to the facts in that case.

And now, April 20, 1931, the libel is dismissed, at the costs of the libellant.

From M. M. Burke, Shenandoah, Pa.