Cairgle, Appellant, *v*. American Radiator and Standard Sanitary Corporation.

Argued November 13, 1950. Before DREW, C. J., STEARNE, BELL, LADNER and CHIDSEY, JJ.

*Robert L. Prior,* with him *John J. McGrath,* and *McGrath, McGrath, & McGrath,* for appellant.

*Sidney J. Watts,* with him *Baker, Watts & Woods,* for American Radiator & Standard Sanitary Corp., appellee.

*Charles J. Margiotti,* Attorney General, *Ralph H. Behney* and *M. Leon Tolochko,* for Commonwealth of Pennsylvania, appellee.

OPINION BY MR. JUSTICE BELL, January 2, 1951:

James Cairgle died from silicosis on April 30, 1948, leaving a widow, Elizabeth Cairgle, claimant, from whom he had been separated since 1932, and a mistress who had lived in his home since 1942. Elizabeth Cairgle filed her claim to compensation with the Workmen's Compensation Board on the ground that she was a dependent widow. At the end of the first hearing before the referee, the defendant brought out the fact that claimant had had five (adult) children during the time she lived with her husband and three (minor) children after she separated from her husband, known from their birth as Harry Owens, born May 4, 1939, Joan Marie Owens, born July 11, 1942, and Rancy Mae Owens, born October 28, 1943.

At the second hearing, counsel for the claimant moved to amend the claim-petition to include the three aforesaid minor children of the claimant. This case was treated by all parties as if the petition for amendment had been allowed. The referee, the Workmen's Compensation Board, the County Court of Allegheny County, and the Superior Court of Pennsylvania, (a) disallowed the widow's claim in her own right, and (b) found that said three minor children were illegitimate and were not entitled to compensation benefits.

This appeal concerns only the claim of the said minor children; their right to recover depends as we shall see upon whether or not they were the legitimate children of Cairgle. Excluding all incompetent testimony, the evidence disclosed the following facts, all of which were found by the referee and affirmed by the Workmen's Compensation Board upon adequate and competent evidence:

Cairgle and Elizabeth, his wife, separated in 1931; shortly thereafter they resumed living together and

then separated permanently in May, 1932. Claimant testified that although she and the decedent never again lived together as man and wife or slept together, that she had "gone to bed with him" from time to time and as recently as August, 1947. She also testified that decedent gave her $15. to $20. every pay day until August 1947 and in this she was corroborated by a daughter and a son. This testimony was disbelieved by the referee and by the Workmen's Compensation Board. *Uncontradicted testimony need not be accepted as true (Aaron v. Strausser, 360 Pa. 82, 85, 59 A. 2d 910; District of Columbia's Appeal, 343 Pa. 65, 79, 21 A. 2d 883; Nanty-Glo Boro v. American Surety Co., 309 Pa. 236, 163 A. 523)*; and unless there is a capricious disregard of relevant, credible testimony, the findings of fact by the referee, adopted or affirmed by the Board, if based upon adequate and competent evidence, will be sustained on appeal: *Kransky v. Glen Alden Coal Co., 354 Pa. 425, 427, 47 A. 2d 645; Jaloneck v. Jarecki Mfg. Co., 157 Pa. Superior Ct. 609, 615, 43 A. 2d 430; Barkus v. Thornton-Fuller Co., 157 Pa. Superior Ct. 239, 242, 42 A. 2d 320; Wahs v. Wolf, 157 Pa. Superior Ct. 181, 186, 42 A. 2d 166; Dulsky v. Susquehanna Collieries Co., 116 Pa. Superior Ct. 520, 530-1, 177 A. 60.*

In 1936 Elizabeth Cairgle met a man named Owens who rented and paid for a house for her. In 1945 she went to live in Owens' home although she testified that she had a separate room.

After claimant and her husband, James Cairgle, separated (in 1932), a woman named Estelle came to live with Cairgle in 1942 and continued to live with him until his death under the name of Mrs. Cairgle.

The three minor children for whom this claim was filed were given the name *at birth* of Owens by their mother. Thereafter they lived at the Owens home and Owens supported them. Elizabeth, their mother, testi-

fied that her husband gave her $15. to $20. a week, *but none of it was for the support of these three minor children.*

Estelle admitted, thus corroborating Elizabeth and her daughter and son, that Cairgle met Elizabeth on occasions and that she occasionally came to their home, but testified that so far as she knew, and she was sure she would have known, Cairgle and Elizabeth never had intercourse together, or were alone any place where they could have had intercourse.

Considerable reliance by the referee and the Workmen's Compensation Board was placed on the claimant's admissions that the three minor children *"were by another man"*, . . . *"I don't know whether whose are whose, . . ."*. Claimant explained the fact that the children were called Owens as follows: "I gave them the name of Owens because I wasn't living with my husband. That is why Owens had to be the name because I was not living with my husband. I thought it better for me not to have them named Cairgle."

The daughter, Della Jenkins, testified that after her father and mother had separated, her mother went out with her father "a couple of times a month; and he went to her house two or three times every week". No dates or years were given. The son testified he had seen decedent and claimant together several times in a tea room, but no years for these meetings were fixed in the testimony. Evidently this as well as other testimony of the daughter and son was disbelieved, although no specific finding to this effect was made.

Claimant contended that the three minor children must be considered legitimate because of the exceptionally strong presumption of legitimacy and the fact that defendant had failed to prove non-access; whereas claimant's testimony, supported by a daughter and son, as above set forth, proved access; and, therefore, under the law, the children must have been legitimate.

Not only did claimant testify as to access and intercourse, but Estelle admitted on cross examination: "Q. Did you know at any time whether Elizabeth visited that home? A. Sure she has been to my house since we have been together, but she didn't come as anything to him. Q. Did she ever remain in the house over night? A. Not that I know of. I was always there. Q. Was she ever alone with your husband in the house, that you know of? A. Not that I know of . . . . . . . . Q. Mrs. Cairgle might have visited the house when you weren't there, isn't that right? A. She could have, but I don't think she did. Q. She could have gone out with her husband, and you wouldn't know it, isn't that so? A. I don't think that happened. Q. You weren't there 24 hours? A. I wasn't with him 24 hours, but I don't think he did. Q. He could have stopped at her home on the way to his home? A. Whenever he stopped he would always tell me. Q. He did stop then? A. He would always tell me. He didn't go any place without telling me. He was very fond of me and very nice to me." Estelle must have been testifying with respect to the period from 1942 onward, because it was not until then that she moved into decedent's home.

Under Section 307 of the Workmen's Compensation Act of June 2, 1915, as amended by the Act of April 26, 1929, P. L. 829, 77 P.S. §§561-562, legitimate children under the age of sixteen are entitled to compensation regardless of residence with their father or contributions of support from him: *Morris v. Glen Alden Coal Co.*, 136 Pa. Superior Ct. 132, 134, 7 A. 2d 126; *Nordmark v. Indian Queen Hotel Co.*, 104 Pa. Superior Ct. 139, 159 A. 200; *Kusiak v. Hudson Coal Co.*, 91 Pa. Superior Ct. 106; *Polasky v. Philadelphia & Reading Coal & Iron Co.*, 82 Pa. Superior Ct. 182.

"The terms 'child' and 'children' shall include", by said Act, "stepchildren and adopted children and [illegitimate] children to whom he stood in loco parentis,

if members of decedent's household at the time of his death . . . . ." In other words, compensation may be awarded an illegitimate child if there be proof of two co-existing conditions: (a) that the deceased employee stood in loco parentis to such child; and (b) that the child was a member of decedent's household at the time of his death: *Kransky v. Glen Alden Coal Co.*, 354 Pa. 425, 426, 47 A. 2d 645; *Smrekar v. Jones & Laughlin Steel Corp.*, 137 Pa. Superior Ct. 183, 188, 8 A. 2d 461; *Molz v. Hansell*, 115 Pa. Superior Ct. 338, 342, 175 A. 880. Neither of these conditions applied in the instant case, consequently the claimant could recover, as she admits, only if said minor children were legitimate.

For reasons of public policy it has been the law for centuries that there is a tremendously strong presumption that children are legitimate. The old rule, that the presumption of legitimacy could not be overcome by any proof less than the absence of the husband beyond the seas immediately prior to and during the whole period of gestation, was so contrary to human experience that it was abandoned in Pennsylvania as early as 1814: *Commonwealth v. Shepherd*, 6 Binney 283; *District of Columbia's Appeal*, 343 Pa. 65, 76, 21 A. 2d 883. The presumption of legitimacy is, however, still one of the strongest known to the law and can be overcome only by proof of facts establishing non-access or that the husband was impotent or had no sexual intercourse with his wife at any time when it was possible in the course of nature for the child to have been begotten: *Dennison v. Page*, 29 Pa. 420, 422; *Dulsky v. Susquehanna Collieries Co.*, 116 Pa. Superior Ct. 520, 525, 177 A. 60; *Janes's Estate*, 147 Pa. 527, 530, 23 A. 892. This is the modern rule.

We may well repeat what was so aptly said by the Court in *Dennison v. Page*, 29 Pa. 420, 422, 423, 425, 426: "Where a child is begotten and born whilst its mother is a married woman, its legitimacy is presumed,

until the contrary is clearly made to appear . . . . A child born in wedlock, though born within a month or a day after marriage, is legitimate by presumption of law . . . . Where the husband . . . has access to the mother of the child, the presumption that he is its father is *conclusive* . . . . [T]he fact that the wife was living in adultery was not sufficient to destroy the legitimacy of a child born in wedlock [unless there] . . . be evidence from which a jury could find non-access".*

In order to successfully rebut the presumption of legitimacy, the evidence of non-access or lack of sexual intercourse or impotency must be clear, direct convincing and unanswerable (*Thorn Estate,* 353 Pa. 603, 606, 46 A. 2d 258; *Mays' Estate,* 141 Pa. Superior Ct. 479, 489, 15 A. 2d 569; *McAnany's Estate,* 91 Pa. Superior Ct. 317, 327), although it is not necessary that the possibility of access be completely excluded: *Mays' Estate,* 141 Pa. Superior Ct. 479, 15 A. 2d 569; *Commonwealth v. Barone,* 164 Pa. Superior Ct. 73, 63 A. 2d 132; *Commonwealth v. Gantz,* 128 Pa. Superior Ct. 97, 193 A. 72; *Dulsky v. Susquehanna Collieries Co.,* 116 Pa. Superior Ct. 520, 531, 177 A. 60; *Commonwealth v. DiMatteo,* 124 Pa. Superior Ct. 277, 188 A. 425; *In re Findlay,* 253 N. Y. 1, 170 N. E. 471 (opinion by Judge CARDOZO). Moreover, our public policy is so firmly established and so strong that the courts have repeatedly declared that "non-access cannot be testified to by either the husband or wife in order to overcome the presumption of legitimacy: Com. v. Shepherd, 6 Binn. 283; Dennison v. Page, 29 Pa. 420; County of Tioga v. South Creek Twp., 75 Pa. 433": *District of Columbia's Appeal,* 343 Pa. 65, 76, 21 A. 2d 883. In *Janes's Estate,* 147 Pa. 527, 531, 23 A. 892, the Court said: "A child born or begotten in wedlock is presumed

---

* Italics, ours.

to be legitimate, and neither the mother nor her husband can bastardize it by testifying to non-access."

It follows that a wife is competent to prove the fact and time of her marriage, the date and place of birth of her child, the name she gave the child, the fact of access, her separation from her husband, her own adultery, where she and the child have lived, who supported the child, and any other independent facts affecting the question of legitimacy, even though some of those facts may result in establishing illegitimacy: *Janes's Estate,* 147 Pa. 527, 530, 23 A. 892; *Dennison v. Page,* 29 Pa. 420, 423, 424, 425; *Commonwealth v. Shepherd,* 6 Binney 283; *Commonwealth v. Gantz,* 128 Pa. Superior Ct. 97, 193 A. 72; *Commonwealth v. Atherton,* 129 Pa. Superior Ct. 64, 194 A. 779; *Commonwealth v. Barone,* 164 Pa. Superior Ct. 73, 63 A. 2d 132; *Commonwealth v. DiMatteo,* 124 Pa. Superior Ct. 277, 188 A. 425.

Applying the aforesaid principles to the facts in the instant case, what do they show?

If, as claimant testified, she had sexual intercourse with her husband during her pregnancy for her minor children when she was living in adultery with another man, the children would be considered, in law, the children of her husband and the presumption of legitimacy would be irrefutable: *Dennison v. Page,* 29 Pa. 420, 423; *Dulsky v. Susquehanna Collieries Co.,* 116 Pa. Superior Ct. 520, 525, 177 A. 60.

But the referee who saw and heard the witnesses and the Workmen's Compensation Board disbelieved claimant's testimony with respect to intercourse with her husband after their separation, just as they disbelieved the testimony of claimant and of her son and daughter with respect to the weekly payments of money allegedly made by the husband to the claimant after their separation. Moreover, it is clear that claimant's testimony as to her intercourse with her husband was

rendered even more unbelievable by her testimony that she never lived with Owens, in spite of facts and circumstances which led to the inevitable conclusion (reached below) that she was living with Owens in a meretricious relationship from 1936 onwards. Owens, it may be noted, never testified in this case.

To summarize, we have the findings of fact that claimant and her husband separated in 1932; that she had been living in a meretricious relationship with Owens in a home apart from her husband since 1936; that as each of the last three children were born she gave them the name of Owens and they were always known as Owens and never as Cairgle; that they had always lived with Owens and never with Cairgle; and that Owens always supported them and Cairgle never supported them. These facts, supported as they were by the overwhelming weight of what the referee and the Board found was the credible evidence in the case, were sufficient to overcome and rebut the presumption of legitimacy, even though claimant occasionally saw her husband at his home in the presence of Estelle commencing in 1942, or met him a few times at a tea room in months and years unmentioned.

Judgment affirmed.