JULIA MARIA BUSCH, Appellant, v. SUPREME TENT OF THE KNIGHTS OF MACCABEES OF THE WORLD, Defendant, LENA BUSCH et al., Respondents.

St. Louis Court of Appeals, November 28, 1899.

1. **Fraternal Benefit Certificate:** WIDOW AND TWO SETS OF CHILDREN. B married in Germany, 1864, abandoned his wife and children 1879, came to America and married appellant in 1880, and had children by her. His foreign wife died 1885, and he died November, 1895. He held a benefit certificate on his life in favor of appellant for $1,000: Held, that his second marriage after the death of his foreign wife, ripened into a valid common law marriage, and the fund due on the certificate should be paid appellant.

2. ————: COMMON LAW MARRIAGE: APPELLANT LAWFUL WIFE OF DECEASED. After death of first wife, freedom to contract was possessed by each of them, their future conduct as husband and wife toward each other and before the world was, but a public acknowledgment of a lawful marriage between them at common law. His death therefore entitled her as the beneficiary named in the certificate to whatever it called for.

Appeal from City of St. Louis Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

REVERSED AND REMANDED.

*Paul F. Coste* for respondent.

(1) Appellant Julia Maria Busch is not the lawful widow of Peter Busch, because the latter, at the time of the pre-

tended marriage to appellant at Cincinnati on November 29, 1880, had a wife living at Schriesheim, in Germany. Although this wife died on May 4, 1885, a merely continuous cohabitation between Peter Busch and appellant, dating back to 1880, when Peter Busch was not free to marry, in the absence of a remarriage or of conduct or acts on the part of Peter Busch, after the death of his wife, signifying an intent on his part to change his illicit relation to appellant into one, at least, of common law marriage, is insufficient in law to constitute even a common law marriage to this appellant. Public policy, that is to say, the welfare of society in general, and the weight of legal authority sustain this rule. The authorities cited below hold in substance as follows: Collins v. Voorhees, 47 N. J. Eq. 555; Cartwright v. McGown, 121 Ill. 338; Corgile v. Wood, 63 Mo. 501; Collins v. Voorhees, 14 L. R. A. 364. (See foot note and cases cited); Hunt's Appeal, Jackson Estate, 86 Pa. St. 294; Randlett v. Rice, 141 Mass. 385; Hyde v. Hyde, 3 Bradf. 509; Thompson v. Thompson, 114 Mass. 566; Dysart Peerage Case, L. R., 6 App. Cas. 539; Harbeck v. Harbeck, 3 Cent. Rep. 430; 102 N. Y. 714; Fagan v. Fagan, 32 N. Y. S. R. 994; Rundle v. Pegram, 49 Miss. 751: Floyd v. Calvert, 53 Miss. 37; Barnum v. Barnum, 42 Md. 251; Lapsley v. Grierson, 1 H. L. Cas. 498; Rose v. Rose, 67 Mich. 619; Hantz v. Sealy, 6 Binney, 405; Crane v. Burnham, 5 Me. 213; Foster v. Hawley, 8 Hun. 68.

*L. R. & X. P. Wilfley* for appellant.

(1) When a party entering into a marriage contract has previously been married to another person who is still living, the law, in favor of innocence and good morals, raises the presumption that the first marriage has been dissevered by divorce, and the burden is upon the party denying the validity of the second marriage to prove that the former marriage has not been thus dissolved. Klien v. Laudman, 29

Mo. 259; Schmisseur v. Beatrie, 147 Ill. 210; Boulden v. McIntire, 119 Ind. 574; Harris v. Harris, 8 Bradwell, 57; Carroll v. Carroll, 20 Texas, 732; Waddingham v. Waddingham, 21 Mo. App. 630; Hull v. Rawls, 27 Miss. 471; In re Rash's Estate, 53 Pac. Rep. 312 (Mont.); Leach v. Hall, 95 Iowa, 611; Hunter v. Hunter, 111 Cal. 261; Erwin v. English, 61 Conn. 502. (2) A contract of marriage void in its inception on account of the disability of one of the parties to contract, because of a living spouse by a former marriage, or other cause, becomes valid after the removal of the disability, without any new ceremony, agreement or visible change in their relation. Cohabitation, reputation, admissions and declarations of the contracting parties, furnish sufficient evidence upon which to establish a contract of marriage. Johnson v. Johnson, 45 Mo. 595; Donnelly v. Donnelly, 8 B. Mon. 113; In re Taylor, 9 Paige, 610; Breadalbane's Case, 1 Scotch and Divorce App. 182; Teter v. Teter, 101 Ind. 129; Elsner Case, 26 Mo. App. 108; Jackson v. Claw, 18 Johnson, 345; Poole v. People, 52 Pac. Rep. 1025 (Colo.); Williams v. Kilburn, 88 Mich. 279; Hervey v. Hervey, 2 Bl. R. 877. (3) Marriage is a civil status of one man and one woman, capable of contracting, united by contract and mutual consent for life, for the discharge to each other and to the community of the duties legally incumbent upon those who agree to the relation of husband and wife; and no form is necessary for its solemnization. Acknowledgment, cohabitation, and general repute showing that the motives, intention, and agreement of the parties were to live together as husband and wife is sufficient evidence upon which to found a contract of marriage in civil cases. State v. Cooper, 103 Mo. 266; Watson v. Centennial Mut. Life Ass'n, 21 Fed. Rep. 698; Hutchins v. Kimmel, 31 Mich. 126; Langtry v. State, 30 Ala. 536; Jenkins v. Bisbee, 1 Edwards' Chanc. 377; People v. Anderson, 26 Cal. 130; Richards v. Brehm, 73 Pa. St. 140; Dickerson v. Brown, 49 Miss. 357; Lyle v. Elwood, L. R. 19 Eq. Cas. 98; Thorndell

v. Morrison, 1 Casey, 326; Gall v. Gall, 114 N. Y. 109;
Northfield v. Vershire, 33 Vt. 110; Camden v. Belgrade, 78
Me. 204.

BOND, J.—On March 16, 1893, a fraternal beneficial
order, of which Peter Busch was a member, issued a benefit
certificate upon his life for $1,000, which designated as the
beneficiary therein "Julia Maria Busch bearing the relation-
ship of wife." Peter Busch died November 9, 1895. Julia
Maria Busch brought suit upon the benefit certificate, to
which the defendant answered in the nature of a bill of inter-
pleader, alleging that in addition to plaintiff, there were two
other sets of claimants for the fund, to wit, certain children
borne by plaintiff to the deceased, and certain other children
alleged to have been born of a wedlock which he had con-
tracted in Germany. The bill was sustained and upon a hear-
ing of the cases made by the rival claimants, the court directed
the payment of the fund, share and share alike, to both sets of
children. Upon this decree Julia Maria Busch appealed.

There was evidence tending to prove that six of the
claimants were born of a marriage between their mother and
one Peter Busch, entered into in a small German town in
1864; that the said Peter Busch abandoned his wife and
children about 1879 and located in America, and was no other
than the Peter Busch upon whose life the benefit certificate
was issued; that the foreign wife died in 1885. The undis-
puted evidence is that the deceased and appellant (Julia
Maria Busch) went through a formal ceremony of marriage
in Cincinnati in 1880, and from that time until the death of
deceased lived together as husband and wife, and as such there
were born unto them six children, two of whom were surviving
at the death of their father, and constituted one set of claim-
ants to the fund in dispute.

It is conceded that if the marriage entered into by the
deceased after he came to America by the cohabitation of

the parties to that contract and their reputation as spouses, which they maintained subsequent to the death of the foreign wife, was sufficient to establish a valid marriage between them after that event, then the entire fund due on the benefit certificate must be paid to appellant, since she is the beneficiary designated therein, and (upon the assumption of the validity of her marriage with the deceased) belongs to the class prescribed by the laws of the Order as the proper subjects of its bounty. This narrows the inquiry to a single question. What was the effect of the death of the first wife upon the marriage state which had been assumed by deceased and appellant prior to that event, and which was thereafter in all respects continued and acknowledged before the world, until the death of Peter Busch? Undoubtedly when appellant and the deceased were married in 1880 by a formal ceremony, it was their purpose and object to make public announcement that their future relations would be that of husband and wife. It is not pretended when this was done, nor at any time before the death of Peter Busch, that appellant had any knowledge whatever of the existence of a legal impediment to the creation between him and her of the lawful status of husband and wife. Hence it was undeniably her purpose and intent by all of the subsequent relations which she continued to sustain to the time of his death, to manifest to the world that she was the lawful wife of Peter Busch. Whether Peter Busch at the time of the ceremony of marriage between him and appellant was aware of his incapacity to enter into that contract, it is not an essential inquiry, in judging the legal effect of his continued deportment as lawful husband, and his continued acknowledgment of her as his lawful wife after his disability to bear that relationship had been removed by the death of his former wife (1885). The material question is, what (after this latter date) did he intend her and the public to understand by his future ostentation of the status of husband and wife, himself and appellant? In contracts implied from

conduct, as well as in those created by express agreement, the law imputes to the promisor that intent (however different from his personal motive) which a reasonable construction must ascribe to his acts or words. In the contract under review the mutual intent of the parties to become husband and wife could not be legally effectuated prior to 1885 (the date of the death of the first wife) ; nor up to that time were they in law husband and wife. But after that date entire freedom to contract was possessed by each of the parties, and their future conduct, as husband and wife, towards each other and before the world, could only be reasonably construed as a public acknowledgment of a lawful marriage in fact between themselves under the principles of the common law recognized in this state and elsewhere. State v. Cooper, 103 Mo. 266; Johnson v. Johnson, 45 Mo. 595; Fenton v. Reed, 4 Johnson's Reports, 52; 2 Kent's Com. 87. We therefore hold that from 1885 until his death, appellant was the lawful wife of Peter Busch, and reverse the decree in this case and remand the cause with directions to the trial judge to order the fund in controversy to be paid to appellant. It is so ordered. All concur.