# Kleinert *versus* Ehlers.

*Legal Presumption of Legitimacy, how rebutted.—Record of Decree of Divorce, what evidence of.—Effect of, as Proof of Legitimacy.*

1.  Where, in a feigned issue to determine the legitimacy of a son and daughter, it was alleged that the mother was pregnant with the son, when married to the putative father, and there was contradictory evidence as to the time when the son was born, and as to the pregnancy of the mother, which the court submitted to the jury, with instructions that the law presumed a child born after marriage, whether begotten before or after, to be the child of the husband; that where the parents might have had sexual intercourse, access was to be presumed, and that these legal presumptions must be rebutted by evidence plainly showing non-access by the husband, so that he could not, in the order of nature, be the father of the child: *Held,* that it was not error thus to submit the case to the jury, there being no conclusive evidence of non-access to repel the legal presumptions arising from the birth of the son after marriage.

2.  In the same issue, as to the legitimacy of the daughter, where, nearly two years before her birth, the mother had left her husband (who resided in Pottsville), and gone to Philadelphia to reside, in which city she was frequently visited by her husband, who, however, after the birth of the daughter, procured, in Schuylkill county, a divorce from his wife, on the ground of desertion, without appearance for or notice to her, it was not error in the court to submit to the jury all the evidence of access on the part of the husband, with the record of divorce, and to decline to charge them that the divorce was a judicial determination as to separation for two years, which, with evidence of their separate residence, rebutted the legal presumption of access.

3.  The record of divorce concluded only the desertion of the wife, not the non-access of the husband: and it did not estop the children from claiming

legitimacy, for, if illegitimate, they were not parties to the record, and if privies, either in blood or estate, they were legitimate.

ERROR to the Common Pleas of *Schuylkill county.*

This was a feigned issue directed by the Orphans' Court, to ascertain two facts connected with the distribution of the estate of August Ehlers, deceased, in the hands of Frederick Ehlers and Ernst Kleinert, administrators, &c., of deceased, viz. : Whether George W. Ehlers is the son of August Ehlers, deceased, and whether Ann Elizabeth Ehlers is the daughter of August Ehlers, deceased. Mr. Kleinert, who was married to a sister of the deceased, and other brothers and sisters of the deceased, denied that these children were his lawful heirs, and the feigned issue was made up in the name of George W. Ehlers and Ann Elizabeth Ehlers, as plaintiffs, and Ernst Kleinert, as defendant. The questions raised by the pleadings were as above stated. The marriage of August Ehlers with Mary Rupp, on the 4th of March 1835, and the birth of these her children, were not controverted, but it was alleged that Mary Rupp was far advanced in pregnancy at her marriage; that George W. Ehlers was born four or five months afterwards, whereas August Ehlers had no acquaintance with her more than four days before the marriage. That, in consequence of the fraud practised on him, he was so indignant that she left him in Pottsville, and removed to Philadelphia, where, on the 5th of April 1838, she gave birth to Ann Elizabeth, at the Pennsylvania Hospital. That he never cohabited with her afterwards; that in July 1837 he went to Germany, returning about the New Year following, with three of his sisters; that on the 28th of October 1838, he applied to the Common Pleas of Schuylkill county for a divorce, on the ground of desertion, which was decreed July 24th 1839.

The cause of their separation was denied on the other side, and the fact of his visiting her in Philadelphia and offering to provide for her and George, was proved by plaintiff's witnesses, among whom was the wife.

The plaintiff, in the issue, requested the court to instruct the jury as follows :—

1. That the evidence on the part of the plaintiff proves the legitimacy of George W. Ehlers and Ann Elizabeth Ehlers, and that all the facts and circumstances testified to by the witnesses on the part of the defendant, do not amount to such evidence as is required by law to repel the presumption of legitimacy, arising from the marriage.

2. That if the jury believe that Mrs. Ehlers was visibly pregnant when she was married to Ehlers, the presumption of law is that he was the father of the child, and the acts and declarations of Ehlers, as proved by Mrs. Williams, show that Ehlers recognised the child as his own, and that this presumption of law is not rebutted by the evidence on the part of the defendant.

[Kleinert *v.* Ehlers.]

3. That the acts and declarations of August Ehlers, as proved by the uncontradicted testimony of Emma Williams, show that he recognised George W. Ehlers as his child, and if the jury believe her evidence, they must find in favour of the plaintiff on the first count.

4. That the uncontradicted evidence of Emma Williams proves that August Ehlers and his wife were together at a time when he might in the order of nature have been the father of Ann Elizabeth Ehlers, and that all the facts and circumstances in the case do not afford that irresistible presumption required by law, that sexual intercourse did not then take place, and therefore they must find in favour of the plaintiff on the second count.

5. That whenever a husband and wife are proved to have been together at a time when in the order of nature the husband might have been the father of an after-born child, if sexual intercourse did then take place between them, such intercourse was *primâ facie* to be presumed, and that it is incumbent on those who dispute the legitimacy of the after-born child, to disprove the fact of sexual intercourse having taken place by evidence of circumstances which afford irresistible presumption that it could not have taken place, and not by mere evidence of circumstances which might afford a balance of probabilities against the fact that sexual intercourse did not take place; and that there is not such irresistible evidence of facts and circumstances in this case as will warrant a jury in finding in favour of the defendant.

6. That there is no irresistible evidence that Ehlers did not have access with his wife within the time in which in the order of nature he might have been the father of Ann Elizabeth Ehlers, and that therefore the verdict of the jury must have been in favour of the plaintiff in the second count.

The court below negatived the first, third, and fourth points. As to the second point, they charged that the law presumes that a child begotten before but born after marriage, is the child of the husband; that this presumption arises in this case, but whether it is rebutted by the evidence, is a question for the jury. As to the fifth point of plaintiff, the court charged that *whenever husband and wife have intercourse or access to each other, so that sexual intercourse might have taken place, there is a legal presumption that it did take place, and that the husband is the father of the child;* and "even when marriage follows pregnancy, and precedes birth, he who marries the pregnant woman is presumed to be the father of the after-born child. *The evidence to rebut these legal presumptions must plainly show such non-access on the part of the husband, that he could not in the order of nature be the father of the child.* Whether the evidence in this case plainly shows this, and rebuts these legal presumptions, is for the jury." As to the sixth point of plaintiff, the court said, "Irresistible

[Kleinert *v.* Ehlers.]

evidence is not required, but such as clearly satisfies the minds of the jury; and with this explanation, we refuse to instruct you as requested."

The defendant also propounded certain points, which were as follows :—

1. The record of the proceedings in divorce of Ehlers *v.* Ehlers, given in evidence by the plaintiff, is conclusive proof that for two years prior to the institution of such proceedings in divorce, the respondent, Mary Ehlers, had deserted her husband, August Ehlers, and had persisted in such desertion during all of said period. And that such desertion being the foundation of the decree of divorce and the point directly in issue, it has been judicially determined, that during said period of two years, there was a separation between the libellant and respondent, which separation, accompanied with the evidence in this cause, that during said period, Mary Ehlers resided in Philadelphia, and August Ehlers in Pottsville, rebuts the legal presumption of access between them.

2. That whether or not August and Mary Ehlers cohabited together in 1837, at such period that the second child of Mary Ehlers could have been begotten by August Ehlers, must be established by affirmative evidence, independent of legal presumption, and that the record in divorce is evidence tending to rebut the evidence of access.

In answer to the first of these points, the court instructed the jury that the decree in divorce judicially determined that the respondent had, for two years next before the filing of the complaint, wilfully and maliciously deserted and absented herself from the habitation of her husband without reasonable cause, but refused to give the instruction prayed for.

The second point was answered in the negative, with the qualification that the after proceedings and decree in divorce was a fact to be taken into consideration by the jury.

In the general charge, the court below said, If Mrs. Ehlers was not pregnant at the time of her marriage, and the son was born as she had testified in November 1835, there would be no doubt of his legitimacy. If she were pregnant, and the child was born before August or September, as was testified by one witness, the jury must decide whether the evidence plainly showed non-access before marriage.

As to the legitimacy of Ann Elizabeth Ehlers, who was born April 5th 1838, the court submitted the fact of access by the husband so that he might in the order of nature be the father of this child, as a question for the jury, reminding them of the legal presumption of legitimacy.

Under these instructions there was a verdict and judgment in favour of plaintiff on both issues. The case was then removed

[Kleinert *v.* Ehlers.]

into this court, by the defendant, where the following matters were assigned for error.

The court erred in the answer to plaintiff's fifth point as printed in italics above; 2. In not answering fully and in the affirmative the first point of defendant below; and 3. In not answering the defendant's second point in the affirmative, and in adding to the negative instructions which were given, a qualification which was pointless and unmeaning.

*Meyer Strouse*, and *F. W. & J. Hughes*, for plaintiff in error, as to the legal meaning of the word *access*, cited Dennison *v.* Paige, 5 Casey 423; Banbury Peerage Case, 33 Law Lib. 436,— and argued, that the court erred in using the word to indicate merely a meeting of the parties, and yet attached to it the legal rules which govern its legal meaning of "*sexual intercourse;*" in effect instructing the jury, that access can be disproved only by showing facts which make it a physical impossibility.

That access was not to be presumed, merely because the parties were within such distance that it was possible: Shelford on Marriage and Divorce 711, 3 Law Lib. 433; Clarke *v.* Maynard, 6 Madd. 364, 8 East 193. That where husband and wife were living in such habits of intercourse, as that the husband might be the father of the child, this presumption may be rebutted and disproved: 33 Law Lib. 432; 32 Law Lib. 434.

The effect of the record of the decree of divorce was wrongfully restricted by the court below to evidence of mere *desertion;* while, to authorize the decree, not only desertion, but absence from his habitation for two years, must have been established by proof.

This decree was conclusive on the parties and their privies, the persons who claim as their children, and it embraces separation and total abandonment: 1 Bouvier's Law Dic. 413; Webster's Dic. "Desertion." It could have been defeated by proof of temporary cohabitation and sexual intercourse, but it was evidence which tended to rebut the evidence of access, and the court erred in saying, that as to the legitimacy of Ann Elizabeth Ehlers, no evidence was necessary other than the legal presumption; notwithstanding their divorce, and the fact that they lived more than one hundred miles apart.

*D. B. Green, E. O. Parry*, and *T. Cuyler*, for defendants in error, contended that the instruction of the court as to the presumption of legitimacy, when there was a possibility of sexual intercourse, was correct; citing Dennison *v.* Paige, 5 Casey 424; Head *v.* Head, 1 Sim. & Stu. 150; Banbury Peerage Case, Id. 153; Bury *v.* Philpot, 2 Milnes & Keene 349; Cross *v.* Cross, 3 Paige 139; Morris *v.* Davis, 3 Car. & Payne 215, 278.

As to the decree of divorce, it was argued, that the children

[Kleinert *v.* Ehlers.]

were not to be affected by it so as to deprive them of support, or destroy their claim to the estate of him who, after their birth, instituted proceedings for divorce on the ground of the mother's desertion. They were neither parties nor privies to it, nor was there in it any question involving the maternal or paternal relation. The fact of his repeated visits to her while in Philadelphia, and of cohabitation there, is sufficient to raise the presumption of legitimacy in favour of the daughter also.

The opinion of the court was delivered, March 11th 1861, by

WOODWARD, J.—This was a feigned issue to try the legitimacy of George and Ann Elizabeth Ehlers. If legitimate, they were the rightful heirs of their deceased father; if not, his estate would belong to the plaintiff in error as next of kin.

First, as to the legitimacy of George. The putative father, August Ehlers, was married to the admitted mother, Mary Rupp, on the 4th March 1835. What time George was born was disputed in the evidence. The testimony of Moses Strouse tended to fix the date of his birth as early as September—that of Mrs. Theresa Ritz as late as December ensuing the marriage—but Mrs. Ehlers, the mother, swore that he was born on the 28th November 1835. This would be but six days short of nine months from the marriage, and if believed by the jury, would be competent time. But there was some evidence, though of a very unsatisfactory nature, that Mrs. Ehlers was pregnant when she was married. The learned judge submitted all the evidence to the jury, with instructions, that if George was born in November, there would be no doubt of his legitimacy, but that if the mother was pregnant when married, and the child was born at the time testified by Moses Strouse, the jury were then to decide, whether the evidence plainly shows the non-access of the husband before the marriage. He added, that the law presumes a child born after marriage to be the child of the husband; that it presumes, also, that where the child is begotten before but born after marriage, the husband is the father; that where the parents might have had sexual intercourse, access is to be presumed, and that these legal presumptions must be rebutted by evidence, plainly showing non-access by the husband, so that he could not in the order of nature be the father of the child.

These instructions seem to us to be fully sustained by the ruling in Dennison *v.* Paige, 5 Casey 423, and by the answers of the judges in the Banbury Peerage Case, as given in Shelford on Marriage and Divorce, 716 Law Library, Vol. 33, p. 436.

The jury may, therefore, have well found that George was born in competent time after the marriage, or if he was not, that his parents had access before their marriage; and either way, his legitimacy was established. There was no such conclu-

sive evidence of non-access before marriage, as to repel the legal presumption and convict the court of error in submitting the cause in this manner to the jury.

Next, as to the legitimacy of Ann Elizabeth. In consequence of disagreements between Ehlers and his wife, she left him at Pottsville and came to Philadelphia, to support herself with her needle before the birth of George. The proof was clear that Ehlers frequently visited her in Philadelphia, and she swore, that after she was pregnant with her second child, he gave her $100 to defray her lying-in expenses. This child was born April 5th 1838. On the 28th October 1838, he applied to the Court of Common Pleas of Schuylkill county, for a divorce on the ground of two years' prior desertion and persistence therein by his wife, and on the 24th July 1839 a divorce was decreed. She did not appear to the subpœna, and there was no evidence that she had notice of the proceedings.

The court was asked to charge, that this was a judicial determination, that during said period of two years, there was a separation between the libellant and respondent, which separation, accompanied with the evidence of their residence, one in Pottsville and the other in Philadelphia, rebuts the legal presumption of access between them.

The learned judge submitted all the evidence, the record of divorce inclusive, to the jury, with the question, Had Ehlers access to his wife, so that he might in the order of nature be the father of her daughter?

This was as much as the plaintiff in error had a right to ask. He argues, that the record of divorce was a conclusive ascertainment of the fact of desertion, during the period within which Ann Elizabeth must have been begotten.

Be it so, still a deserted husband might look up his wife, and have what the law denominates *access* during the desertion. And this husband did so, not once but several times, if the testimony of the wife, of Emma Williams, and of Mrs. Ritz, were believed by the jury. The record of divorce concludes the fact of desertion of the wife, not of non-access of the husband.

But how is its conclusive effect even as to the fact of desertion to estop these children? They were not parties to that record, and to say that they are privies, either in estate or blood, and therefore are estopped by it, is to admit their legitimacy; and that kills the case of the plaintiff in error.

The truth is, due effect—full as much as it deserved to have— was given to the record when it was referred to the jury as establishing the desertion of the wife. They took that fact as true, doubtless, but there was other evidence, from which they might find and did find the access of the husband and wife, within competent time before the birth of the daughter, and so estab-

[Kleinert *v.* Ehlers.]

lished her legitimacy in accordance with, though not exclusively upon, the presumptions which the law sets up in her favour.

The judgment is affirmed.