## Peters v. Peters.

*Divorce — Adultery — Evidence — Sufficiency—Testimony of physician— Husband and wife — Competency — Non-access — Acts of June 7, 1907, and April 21, 1915.*

1. In a suit for divorce on the ground of adultery, testimony that the respondent was frequently in the company of a man, not her husband, that she went to his place of business, went out with him in his automobile and went to a club with him, is not sufficient to establish that adultery was committed. While the circumstances are suspicious, they are consistent with innocence.

2. Testimony of a physician that the respondent in a suit for divorce showed him a foetus that she said had been expelled from her womb, is incompetent as evidence against her. The Act of June 7, 1907, P. L. 462, prohibits the giving of such evidence by a physician.

3. In a suit for divorce, non-access on the part of the husband cannot be established as a part of the proof of adultery upon the testimony of the husband or wife alone, or by their admissions. The Act of April 21, 1915, P. L. 154, amending the Act of June 8, 1911, P. L. 720, and providing that the libellant in divorce shall be fully competent to prove all facts, is not sufficiently explicit to justify extending its application to the abrogation of the well-known and long-established rules of evidence prohibiting such testimony.

Divorce. C. P. Beaver Co., March T., 1923, No. 409.

*Reed, Leonard, Coghlan & Smith,* for libellant.

READER, J., June 6, 1923.—The ground upon which a divorce is sought in this case is adultery. While the husband testifies that his wife was consorting with two men since August, 1922, the only evidence tending to connect the wife with either of these men is that concerning her relations with Charles G. Stadler.

The evidence shows that the respondent was frequently in the company of Stadler. On several occasions she went to his place of business in the Borough of Ambridge. This, however, was a place of business, and not a place of such character that their mere presence there together requires the conclusion that adultery was committed. The respondent was also shown to have been with Mr. Stadler on several occasions in his automobile, and on one occasion was with him at the Americus Club in Pittsburgh. On most of these occasions, however, another person or persons were present. It seems also that when the respondent was sick, probably suffering from the effects of a miscarriage, Stadler rendered her a service in securing an ice-pack for her.

Giving all of the evidence as to these relations with Stadler an interpretation most unfavorable to the respondent, we are of the opinion it does not establish the fact of adultery between them. Suspicious as the circumstances undoubtedly are, they are consistent with innocence of this crime.

The circumstances which most strongly point to the guilt of the respondent are connected with the fact that on or about Jan. 8, 1923, she suffered a miscarriage. The physician who was called to see her that day, and who visited her twice, testified that on the second visit, in the evening, respondent showed him the foetus which she said she had expelled from her womb. He testified that it was of the age of about three and one-half months. We are of the opinion that this testimony of the physician was incompetent, in view of the provisions of the Act of June 7, 1907, P. L. 462, which provides as follows: "Section 1. Be it enacted, etc., That no person authorized to practice physics or surgery shall be allowed, in any civil case, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except

in civil cases brought by such patient for damages on account of personal injuries."

This seems to be the view of the act in question taken by the Court of Common Pleas of Allegheny County in the case of Wiemer v. Wiemer, 70 Pitts. L. J. 511, and 71 Pitts. L. J. 397. The same view was taken by the Court of Common Pleas of Allegheny County in the case of Reid v. Reid, 50 Pa. C. C. Reps. 601. It seems to us that in the present case the testimony of the physician is such as comes within the prohibition of the act.

Even if the testimony of the physician be considered, however, we think there is not sufficient other testimony, taken in connection therewith, to establish the fact of adultery.

The presumption of the law is that this child was the child of respondent and her husband, the libellant.

Evidence was offered, however, on behalf of libellant to prove that libellant and respondent had not had sexual relations for a period of about seven months prior to the time when the miscarriage took place. This evidence consisted in the testimony of several witnesses as to declarations made by the wife as to her relations with her husband, and the testimony of the libellant as to such relations.

Three witnesses testified that the respondent stated to them, or in their hearing, at different times in the month of January, 1923, that her husband had not had sexual relations with her for seven months. The libellant testified that he had not had sexual intercourse with his wife, the respondent, since Aug. 1, 1922. It is thus apparent that the only evidence that libellant was not the father of the child prematurely born on Jan. 8, 1923, as presumed by law, is the statements of the libellant and respondent as to their not having had sexual intercourse within a period which would have made it possible for libellant to be the father. This at once raises the question as to the competency of the husband and wife to prove such non-access. The general rule is, that neither the husband nor the wife is competent to prove non-access for the purpose of proving the illegitimacy of offspring. There must be evidence from other sources to establish non-access. Where such evidence is present, their acts and declarations may be received in corroboration of it.

In the case of Janes's Estate, 147 Pa. 527, the rule is thus stated: "A presumption of legitimacy attaches to birth in wedlock, and it cannot be rebutted by the testimony of the mother or of her husband. It may be overcome by proof of non-access of the husband, but they are not competent to establish it. The proof must come from another source. But the mother is competent to prove the fact and time of her marriage and when her child was born. The rule on this subject is thus stated in 2 Greenleaf on Evidence, § 151: 'The husband and wife are alike incompetent witnesses to prove the fact of non-access while they lived together. But they are competent to testify in cases between third parties as to the time of their own marriage, the time of the child's birth, the fact of access, and any other independent facts affecting the question of legitimacy.' In Taylor on Evidence, 817, the learned author, referring to the same subject, says: 'But this rule does not prevent the parents from proving that the supposed marriage was either invalid or valid, or that their children were born before or after its celebration, though the effect of such evidence is, in the first and third case, to bastardize the issue, and in the others, to establish its legitimacy. For this purpose, too, their declarations, or their old answers in chancery, are admissible evidence.' An examination of the decisions on the point under consideration discloses the

4 D. & C.

fact that they are in entire accord with the rule as above stated. Among our own cases in which it is distinctly recognized and applied are Dennison *v.* Page, 29 Pa. 420; Kleinert *v.* Ehlers, 38 Pa. 439, and Tioga County *v.* South Creek Township, 75 Pa. 433. A child born or begotten in wedlock is presumed to be legitimate, and neither the mother nor her husband can bastardize it by testifying to non-access. It seems, however, that if there is competent evidence which tends strongly to prove that the husband had no sexual intercourse with the wife at the period of conception, their acts and declarations at the birth of the child, and subsequently, may be received as corroborative of it: Dennison *v.* Page, 29 Pa. 420, and cases cited."

It was likewise stated in the case of Dennison *v.* Page, 29 Pa. 420:

"It follows, from the authorities above quoted, that the legitimacy of a child born in wedlock, though begotten before the marriage, is founded upon the supposition that it was begotten by the man who subsequently became its mother's husband, and that this presumption can only be rebutted by clearly proving that no sexual intercourse occurred between the two at any time when the child could have been begotten. Whether it was begotten in or out of wedlock, where the marriage precedes the birth, the presumption of paternity is the same, and the like evidence is required to bastardize the issue. That evidence is proof of non-access. Where the husband, or he who subsequently becomes such, has access to the mother of the child, the presumption that he is its father is conclusive. By the term access, used in this sense, we understand actual sexual intercourse; and this is presumed in the one case from the existence of the marital relation, and in the other from the subsequent marriage. Where marriage follows pregnancy, and precedes birth, he who marries the pregnant woman is presumed to be the father of the after-born child. Upon this presumption rests the doctrine of the common law that legitimacy follows birth in wedlock.

"The question before the jury was whether or not Samuel Page was the father of Mrs. Dennison. That he was her father, his marriage with her mother before her birth clearly establishes, in the absence of proof of non-access. The proffered testimony, in substance, though not in form, was to prove non-access.

"That the mother was incompetent to prove this is perfectly well settled by abundant and uniform authority. Non-access cannot be proved by either the husband or the wife, whether the action be civil or criminal, or whether the proceeding is one of settlement or bastardy, or to recover property claimed as heir-at-law."

To the same effect are the following cases: Com. *v.* Shepherd, 6 Binney, 283; Kleinert *v.* Ehlers, 38 Pa. 439; Tioga County *v.* South Creek Township, 75 Pa. 433.

We think this rule is applicable to the present case. The libellant and respondent lived in the same house during the whole period of time covered by the evidence as to non-access, and down to Feb. 12, 1923, a month after the occurrence of the miscarriage referred to. There was no other evidence whatever tending to show non-access. It is true that none of the cases cited, and no other to which our attention has been called, apply the rule in an action of divorce. We think, however, that the same considerations of public policy require its application in divorce cases. To permit the proof of adultery by such evidence in a divorce proceeding would not merely be subject to the objections stated in the cases cited, but would open wide the door to collusion and fraud.

Peters *v.* Peters.

We think this rule of evidence is not modified by the Act of April 21, 1915, P. L. 154, which amends the Act of June 8, 1911. Section 1 of the act is as follows:

"Section 1. That in all proceedings for divorce, the libellant shall be fully competent to prove all the facts, though the respondent may not have been personally served with a libel, subpœna or rule to take depositions, and may not be residing within the Commonwealth, but has been served by publication only."

It is quite evident that the purpose of the act was to confer competency upon the libellant to prove the facts in issue when the service of process is constructive only. It would require a much more explicit statement of intention to justify extending it to an abrogation of the well-known and long-established rule of evidence above stated.

We are, therefore, of the opinion that the evidence introduced as to non-access of libellant and respondent must be rejected. With this evidence out of the case, we think the adultery of the wife is not proven. It follows that the divorce prayed for should be refused.

*Order.*

Now, to wit, June 6, 1923, the divorce prayed for in this case is refused and the libel is dismissed, at the cost of libellant.

From F. H. Laird, Beaver, Pa.