## Baker et al. v. Weiss et al.

*Paul H. Rhoads,* for plaintiffs.

*John Fox Weiss,* conservator of Lane H. Spencer, respondent, p. p.

*William H. Dunbar* and *H. John Gluskin,* for Evelyn M. Spencer, Mary Lane Spencer, and Samuel A. Schreckengaust, Jr., guardian ad litem of Mary Lane Spencer.

RICHARDS, P. J., specially presiding, December 8, 1941.—The above-captioned equitable proceedings were instituted for the purpose of perpetuating testimony relative to each trust. The whole matter revolves about the legitimacy of a minor child, Mary Lane Spencer. If she be the legitimate child of Lane H. Spencer, she or her issue may eventually be entitled to share in the income and corpus of each trust. ·If she be not his legitimate child, neither she nor her issue has such right. The determination of this question may also affect the rights of others under said trusts.

The bills were duly filed and served, after the appointment of a guardian ad litem for the minor, Mary Lane Spencer. A general appearance was entered for each defendant and each filed an answer. A hearing was held and argument heard.

It is not disputed that courts of equity have jurisdiction to perpetuate testimony· in certain cases. The Supreme Court of this Commonwealth has stated:

"In the equity courts bills are entertained to perpetuate testimony, but only where the matter as to which the witnesses are to be examined cannot be made the subject of immediate judicial investigation. The right to file such a bill exists whenever one is threatened with future disturbance of present possession or enjoyment of property or rights, and no suit at law can be instituted for their protection and preservation at the time the bill is filed": International Coal Mining Co. v.

Pennsylvania R. R. Co. (No. 1), 214 Pa. 469, 470, 471.

This case discusses at some length the scope of equitable jurisdiction in such matters. We will not quote therefrom at any greater length, but will observe that the rule seems to be that equity will perpetuate testimony when cause exists for so doing and the case is not ripe for judicial determination on the merits.

So far as jurisdiction of the parties is concerned, the record shows service of the bills as required by law and the parties defendant have each entered a general appearance. Furthermore, one of the trustees is located here and the principal assets of the trust estates are here. Defendants have raised no question in this respect.

It has been suggested that a means exists at law to determine the legitimacy of Mary Lane Spencer. It is stated that a divorce action by Lane H. Spencer, or his representative, against his wife, Evelyn M. Spencer, charging adultery is such an action. We do not concur in this suggestion. Such an action would be binding only upon the parties thereto. That this is so is evidenced by Commonwealth ex rel. Moska v. Moska, 107 Pa. Superior Ct. 72, 77, and Bullitt's Estate, 308 Pa. 413, 417. In the former it was said:

"Nor do we find merit in the objection that the court committed a vital error in refusing to admit the entire divorce record: Kleinert v. Ehlers, 38 Pa. 439. The divorce proceedings determined only the complaints involved therein, which did not include access or nonaccess of the husband. The issues of adultery and illegitimacy of a child are separate and distinct: Koffman v. Koffman (Mass.), 79 N. E. 780."

In the latter case it was held (p. 417) :

" 'Only such facts and issues . . . as have been acted on, in the sense that they may be said to be "judicially ascertained" or determined, can be held res judicata in a subsequent litigation . . . :' State Hospital v. Cons.

Water Supply Co., 267 Pa. 29; Pasquinelli v. S. Macaroni Mfg. Co., 272 Pa. 468."

We conclude that there is not now available any means of determining the rights of the parties and that the present case is a proper one in which to perpetuate testimony, if it be relevant to the underlying issues.

This brings us to a consideration of the testimony itself. Some of it relates to the development of the child in question on the date of birth. Dr. Herndon, who qualified as an expert in the field of obstetrics, testified that he examined the child shortly after birth and found it to be fully developed. This testimony we find to be relevant and admissible as tending to show the period of gestation, particularly in relation to the evidence of non-access. The weight of it at a trial may be for the jury.

Evidence was also submitted tending to show the non-access of the husband during the period of gestation. The husband was living in Massachusetts and the wife in New Jersey. The wife was not present in Massachusetts from July 1938 to December 22, 1938, during all of which period the husband was there. Since the child was born on August 19, 1939, the usual period of gestation being 280 days, there may be an inference that the husband is not the father of the child.

A maid in the home of the wife also established that a male friend spent a night there on two occasions. This was sometime during the period between October 1, 1938, and a week before Christmas of the same year.

The modern rule relating to non-access does not require that it be absolutely proven. As was well said by our Superior Court in Dulsky v. Susquehanna Collieries Co., 116 Pa. Superior Ct. 520, 531:

"The position taken by the court below and by counsel for claimant is that the presumption of legitimacy stands in this case until the negative proposition of non-access has been *absolutely* proven.

"This is not the modern rule. The presumption only stands until met with such evidence as makes it appear clearly and to the satisfaction of the fact finding body that sexual intercourse did not take place between the husband and wife at any time when he could have been the father of the child or children. Cf. Com. ex rel. Moska v. Moska, 107 Pa. Superior Ct. 72, 76, 162 A. 343.

"In addition to the case cited by Judge KOCH, reference may profitably be made to the opinion of Judge CARDOZO, now Associate Justice CARDOZO of the Supreme Court of the United States, In re Findlay, 170 N. E. 471; 253 N. Y. 1, from which we quote the following: 'Upbringing and belief must yield, we are told, to the presumption of legitimacy . . . Potent, indeed, the presumption is one of the strongest and most persuasive known to the law . . . and yet subject to the sway of reason. Time was, the books tell us, when its rank was even higher. If a husband, not physically incapable, was within the four seas of England during the period of gestation, the court would not listen to evidence casting doubt on his paternity. The presumption in such circumstances was said to be conclusive. . . . The rule of the four seas was exploded by the judgment in Pendrell v. Pendrell, 2 Strange 925, decided in 1732. It was exploded . . . "on account of its absolute nonsense." Since then the presumption of legitimacy, like other presumptions, such as those of regularity and innocence, has been subject to be rebutted, though there have been varying statements of the cogency of the evidence sufficient to repel it. At times the cases seemed to say that any possibility of access, no matter how violently improbable, would leave the presumption active as against neutralizing proof . . . . A formula so inexorable has yielded with the years to one more natural and supple. . . . By and large, none the less, the courts are generally agreed that countervailing evidence may shatter the presump-

tion though the possibility of access is not susceptible of exclusion to the point of utter demonstration. . . . They will not be held legitimate by a sacrifice of probabilities in a futile quest for certainty.' "

This brings us to the consideration of the testimony relating to blood tests. Two experts in this field were called as witnesses and numerous articles and publications dealing with the subject were offered in evidence. These show that there are four types of blood known as A, B, A-B, and O. A and B are constituents of the blood. When A alone is present, the blood is known as type A. When B alone is present, the blood is known as type B. When both A and B are present, the blood is known as type A-B. When neither A nor B is present, the blood is known as type O. O indicates the absence of A and B. According to this testimony, when tests are carefully conducted, it is possible to determine the type of blood and arrive at certain conclusions in regard to parentage. Such tests were made in the present case with the consent of the parties. They showed that Lane H. Spencer had blood known as type O. His wife, Evelyn M. Spencer, also had type O. The child, Mary Lane Spencer, had type B. Since type B can only be derived from one of the parents, the test demonstrates that someone other than Lane H. Spencer is the father of Mary Lane Spencer. The test is one of elimination and is effective only in a certain percentage of cases. The present case falls within the percentage where it is possible to eliminate certain persons as a parent. The test does not show who the parent is, but it does show that certain persons could not be the parent. In the present case, it shows that Lane H. Spencer could not be the father of Mary Lane Spencer.

There is evidence that, within the scope here involved, these tests are accurate and reliable and are so regarded in informed medical and scientific circles. We think that this testimony is clearly relevant and admissible since the tests were voluntarily submitted to.

It is the voluntary nature of the tests which distinguishes this case from Commonwealth v. English, 123 Pa. Superior Ct. 161, 169. That case decided that a witness in a criminal case could not be compelled to submit to blood tests.

We think that the testimony so far produced is relevant and admissible and is of the type which plaintiffs are entitled to perpetuate. It has been argued that Mary Lane Spencer must be living to claim under the several trusts and that tests of her blood may then be made. However, it is possible for her to die under circumstances where her body might not be recovered, in which case the tests could not be made. Furthermore, not only she, but her issue, may claim under the trusts. Aside from this, we feel that plaintiffs are entitled to the testimony of the witnesses now available even though, at some future time, additional testimony may become available. Under all the circumstances we are of the opinion that the situation presented by the bills requires that the testimony be perpetuated.

### Decree nisi

And now, December 8, 1941, it is ordered that a hearing be held before this court for the taking of the testimony of the witnesses, who were called by plaintiffs at the hearing held in this matter August 19, 1941, and of any other witnesses whom plaintiffs may call and whose testimony is relevant on the issue of whether or not Mary Lane Spencer is a daughter of Lane H. Spencer and a possible heir and beneficiary under the trust established in the last will and testament of Lane S. Hart, deceased, or under the trust established by deed of trust of Florence H. Spencer, dated March 31, 1938, or under the trust established by deed of trust of Lane H. Spencer, dated July 5, 1939; that the testimony to be taken at said hearing be reduced to writing and be filed in perpetuam rei memoriam, and be perpetuated in the records of this court; that said testimony be read and used in any action hereafter instituted involving the

714

right of the said Mary Lane Spencer or anyone claiming under her to participate as to income or principal, or in any other way in or under any of the said three trusts; that plaintiffs and defendants and those claiming under them are at liberty on all future occasions to read and make use of said testimony as shall be deemed proper.

Plaintiffs shall give at least 20 days' notice to defendants or their counsel of the date fixed by the court for said hearing for the taking of said testimony; if notice is given to the parties themselves, it may be given by having the Sheriff of Dauphin County deputize the sheriff of the county of the State in which defendants then reside or can be found.

In accordance with a stipulation filed of record, the costs of each of said proceedings, including compensation for the guardian ad litem of Mary Lane Spencer, and his counsel, shall be paid by John Fox Weiss, Esq., as conservator of Lane H. Spencer.

The prothonotary is directed to notify the parties or their counsel of this decree forthwith. If no exceptions be filed hereto within 10 days of notice hereof, as required by law, he shall, as of course, enter the final decree in the form here suggested.