Barbara Brown, Widow of Almer Brown, Deceased, Appellant, *v.* Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania, Connelly Containers, Inc. of Philadelphia and Pennsylvania Manufacturers' Association Insurance Company, Insurance Carrier, Appellees.

Argued June 6, 1975, before Judges CRUMLISH, JR., KRAMER, and BLATT, sitting as a panel of three.

*Sara Duffy*, for appellant.

*David L. White*, with him *James N. Diefenderfer*, for appellees.

OPINION BY JUDGE KRAMER, July 17, 1975:

This is an appeal by Barbara Brown (Brown), widow of Almer Brown, from an order of the Workmen's Compensation Appeal Board (Board), dated December 14, 1972, which affirmed a referee's denial of benefits to Brown's minor son, Almer Maxwell Brown. The referee's award of benefits to three other children of Brown has not been questioned.

Almer Brown died while in the course of his employment on September 24, 1969. From November 1965 until the date of his death, Almer Brown had been residing out of wedlock with Barbara Brown.[1] The referee found that three children[2] of Barbara Brown were, at the time of Almer Brown's death, members of his household, supported and maintained by him. Awards were made to Brown "for and on behalf of" these minor children.

A fourth child, Almer Maxwell Brown, was born to Barbara Brown on December 18, 1969, almost three months after Almer Brown's fatal injury. The referee specifically found that Almer Brown was the natural father of Almer Maxwell Brown, but he denied benefits for this child because, in the referee's view, being born after the death of Almer Brown, "[Almer Maxwell Brown] can neither be deemed to be dependent on [Almer Brown] nor a member of his household. . . ." The Board affirmed, and Brown appeals to this Court.

---

1. The referee found as a fact that "Almer Brown, and Barbara Williams began to reside together, and since then the said Barbara Williams has been known as Barbara Brown."

2. These children were Irvin Darryl Williams, born to Barbara Brown before she began residing with Almer Brown, and Kenneth Lyndell Brown and Tarcila Mary Brown, both fathered by Almer Brown after November 1965.

None of the facts set forth above have been challenged, and Brown's appeal turns solely upon the application of the following language from section 307 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §562 (Supp. 1974-1975):

"Compensation shall be payable under this section to or on account of any child. . . . If members of decedent's household at the time of his death, the terms "child" and "children" shall include stepchildren, adopted children and children to whom he stood in loco parentis, and shall include posthumous children."

The Board affirmed the referee on the authority of *Gierak v. Lehigh & Wilkes-Barre Coal Company,* 101 Pa. Superior Ct. 397 (1931), which we must now expressly disapprove.

In all candor we note that *Gierak* is on all fours with the instant case, and cannot be meaningfully distinguished. Interpreting the same statutory language noted above, the Superior Court, in *Gierak,* reasoned as follows:

"Section 307, clause 7, of the amending Act of June 26, 1919, P.L. 642, to the Workmen's Compensation Act, provides: 'The terms "child" and "children" shall include stepchildren and adopted children and children to whom he stood in loco parentis, if members of decedent's household at the time of his death, and shall include posthumous children.' It will be noticed that it is stated with particularity that stepchildren, adopted children, posthumous children, as well as children to whom a decedent stood in loco parentis, come within its humane provisions. By fixing this limitation, the lawmakers must have intended to exclude all others. It would certainly be an unwarranted implication to extend its meaning to an illegitimate, posthumous child. This is especially true when we consider that the term 'child,' in its ordinarily

legal sense, implies the idea of a marriage relation and not one begotten and born out of lawful wedlock . . ." 101 Pa. Superior Ct. at 399.

Since 1931, when *Gierak* was decided, the appellate cases leave no doubt that illegitimacy *per se* does not disqualify a child from receiving workmen's compensation dependency benefits. *Cairgle v. American Radiator and Standard Sanitary Corporation*, 366 Pa. 249, 77 A.2d 439 (1951); *Irby Construction Co. v. Workmen's Compensation Appeal Board*, 9 Pa. Commonwealth Ct. 591, 308 A.2d 924 (1973). Consequently, the continued viability of the reasoning of the *Gierak* court must be questioned when, in a case such as the one at bar, a posthumous illegitimate child's eligibility is at issue.

Obviously, no posthumous child can meet the test of actual dependency with which illegitimates are.burdened under *Cairgle, supra,* and, but for the recent pronouncements of the Supreme Court of the United States, we might be faced with a difficult question concerning the application of that decision's apparent disqualification of all posthumous illegitimates.[3]

We are, however, obliged to interpret statutes in a manner consistent with the state and federal Constitutions, if such is possible. Statutory Construction Act of 1972, 1 Pa. C.S. §1922(3)ı. More particularly, we must accommodate *Weber v. Aetna Casualty and Surety Company*, 406 U. S. 164 (1972), which held that a statutory provision expressly limiting the right of a posthumous illegitimate child to receive workmen's compensation benefits violated the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The only distinction we can find between *Weber*

3. In *Cairgle* our Supreme Court held that "compensation may be awarded an illegitimate child [only] if there be proof of two coexisting conditions: (a) that the deceased employee stood in loco parentis to such child; and (b) that the child was a member of decedent's household at the time of his death." 366 Pa. at 255, 77 A. 2d at 442.

and the instant case is that in *Weber* the Louisiana statute explicitly dealt with posthumous illegitimates, while in Pennsylvania the posthumous illegitimate's right to benefits is limited by decisional law purporting to interpret more general statutory language. This distinction carries no significance in light of the rather broad holding of the United States Supreme Court in *Weber*. The position of the Court was summarized by Justice POWELL, speaking for the majority:

> "The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an injust way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where—as in this case—the classification is justified by no legitimate state interest, compelling or otherwise." (Footnotes omitted.) 406 U. S. at 176-77.

Consequently, we hold that the term "posthumous children," as used in section 307 of the Act, 77 P.S. §562, embraces posthumous illegitimate children within its meaning, inasmuch as the statute suffers from no facial unconstitutionality with respect to illegitimates. Accordingly, we

## ORDER

AND NOW, this 17th day of July, 1975, it is ordered that the order of the Workmen's Compensation Appeal Board in the above-captioned matter, dated December 14,

1972, is reversed insofar as it affirms the referee's denial of benefits to Almer Maxwell Brown, and this matter is remanded to the Board, pursuant to section 427 of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §881.1 (Supp. 1974-1975), for the determination of an award consistent with the above opinion.