Westinghouse Electric Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Arthur L. Gray, Deceased, by Erin F. Gray, Daughter, Respondents.

Argued November 3, 1977, before Judges CRUMLISH, JR. and BLATT, sitting as a panel of two. Reàrgued October 31, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, DISALLE and CRAIG. Judges BLATT and MACPHAIL did not participate.

*Robert C. Jones,* with him *Jones, Gregg, Creehan & Gerace,* for appellant.

*James E. McLaughlin,* with him *McArdle, McLaughlin & McVay,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE CRUMLISH, JR., December 4, 1978:
Westinghouse Electric Corporation (Employer) appeals a decision of the Workmen's Compensation Appeal Board (Board) affirming a referee's grant of benefits to Erin L. F. Gray (Claimant) asserted by her parent and natural guardian, Gladys Foley.

Arthur L. Gray (Decedent) died while acting within the course of his employment on May 23, 1974. On November 22, 1974, Gladys Foley gave birth to Claimant, a posthumous illegitimate daughter of Decedent. On May 16, 1975, a fatal claim petition was filed on Claimant's behalf by Gladys Foley, as parent and natural guardian. After hearing at which Employer offered no testimony, the referee awarded benefits to Claimant. Upon appeal, the Board sustained the referee's findings of fact and conclusions of law and upheld the award.

The following facts are not in dispute. Decedent was the natural father of Claimant and Gladys Foley the natural mother. Neither Decedent nor Foley knew she was pregnant at the time of Decedent's demise. Foley testified that she and Decedent had intended to marry in the fall of 1974, but that they had not cohabited on a continuing basis, nor had Decedent contributed to Foley's support.

Employer contends that, as a matter of law, a posthumous illegitimate child whose father and mother never lived together nor held themselves out as husband and wife and whose father never contributed to the mother's support, is not entitled to benefits under Section 307 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §562. Section 307 provides in part:

Compensation shall be payable under this section to or on account of any child. . . . If members of decedent's household at the time of his death, the terms 'child' and 'children' shall include step-children, adopted children and children to whom he stood in loco parentis, and shall include posthumous children.

In *Brown v. Workmen's Compensation Appeal Board,* 20 Pa. Commonwealth Ct. 330, 342 A.2d 134 (1975),

we recognized the effect of the United States Supreme Court's decision in *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164 (1972), on the eligibility of a posthumous illegitimate child seeking benefits under the Act. In *Brown* we held that

> the term 'posthumous children,' as used in section 307 of the Act, 77 P.S. §562, embraces posthumous illegitimate children within its meaning.
> . . .

20 Pa. Commonwealth Ct. at 334, 342 A.2d at 136.

Employer asks us to narrow this holding and distinguish the case at hand because in *Brown* the parents, though unmarried, had lived together prior to decedent's death. In addition, he had supported three other children born of that relationship.

If we were to accept Employer's contention and limit recovery to cases where the posthumous illegitimate child is the offspring of parents who had openly and continuously lived together or situations in which the decedent had supported the siblings prior to his death, we would be sanctioning the very discrimination which the Supreme Court in *Weber* condemned.

There, the Court held that a statute, which, although it did not deny the right of recovery to unacknowledged illegitimate children, relegated them to a less favorable position, was a violation of the equal protection guaranteed by the Fourteenth Amendment to the United States Constitution. If we were to hold, as Employer urges, we would be relegating posthumous illegitimates to a position less favorable than that of posthumous legitimate children. This was clearly denounced in *Weber.*

The Supreme Court, in *Weber,* said an "unacknowledged illegitimate child may suffer as much from the loss of a parent as a child born within wedlock or an illegitimate later acknowledged." 406 U.S. at 169.

Likewise, the same is true of posthumous legitimate and illegitimate children.

In concluding, that Court wrote:

The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. . . . Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where—as in this case —the classification is justified by no legitimate state interest, compelling or otherwise.

406 U.S. at 175-76. (Footnotes omitted.)

Consequently, we reaffirm our holding in *Brown* that "posthumous children" as written in Section 307 of the Act embraces within its meaning posthumous illegitimate children.

Accordingly, we

### ORDER

AND Now, this 4th day of December, 1978, the decision of the Workmen's Compensation Appeal Board, No. A-71455, dated November 3, 1976, is affirmed. It is ordered that judgment be entered in favor of Gladys Foley as parent and natural guardian of Erin L. F. Gray and against Westinghouse Electric Corporation, with the latter to pay compensation at the rate of $63.65 per week beginning November 22, 1974, until Erin L. F. Gray's emancipation according to the formula set forth in The Pennsylvania Workmen's Compensation Act.

Interest at the rate of six (%) percent per annum is awarded on any deferred payments.

A twenty (20%) percent contingent fee, or $11,-915.28, is awarded to Attorney James A. McLaughlin, which amount is to be deducted from said weekly compensation payments.

President Judge Bowman dissents.